**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**CERTAIN REAL PROPERTY AND PREMISES KNOWN AS 38 WHALERS COVE DRIVE, BABYLON, NEW YORK, Defendant, Edward J. Levin, Claimant–Appellant.**

No. 981, Docket 90–6268.

United States Court of Appeals,
Second Circuit.

Argued Feb. 14, 1991.

Decided Jan. 3, 1992.

Richard B. Lind, New York City, for claimant-appellant.

Stephen J. Riegel, Asst. U.S. Atty. for the Eastern District of New York (Andrew J. Maloney, U.S. Atty., Robert L. Begleiter, Asst. U.S. Atty., of Counsel), Brooklyn, N.Y., for plaintiff-appellee.

Before PIERCE, WINTER and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Claimant Edward J. Levin appeals from a judgment of forfeiture entered pursuant to 21 U.S.C. § 881(a)(7) on October 4, 1990, in a civil proceeding in the Eastern District of New York (Eugene H. Nickerson, *Judge*). That judgment deprived Levin of his residence, which is located at 38 Whalers Cove Drive, Babylon, New York. We find that the forfeiture was authorized by the statute and not prohibited by substantive due process. Levin also argues that the forfeiture must be classified as punishment under *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and that as punishment, the forfeiture violates the Fifth and Eighth Amendments. While we agree that *Halper* appears to require us to presume the forfeiture to be punishment and to afford the government an opportunity to prove otherwise, the forfeiture, even if seen as punishment, does not violate Levin's constitutional rights. Accordingly, we affirm the district court's judgment of forfeiture.

## BACKGROUND

This case concerns the forfeiture of Levin's personal residence, a condominium located at 38 Whalers Cove Drive, Babylon, New York. The condominium, purchased in 1977, is now worth approximately $145,000. Levin has an equity interest in the property valued at approximately $68,000; mortgages outstanding on the property total $77,000.

In July, 1988, Levin twice sold cocaine inside the condominium to a confidential informant for a total sum of $250. The quantity of the sale is disputed but in any event amounts to no more than 2½ grams. The record indicates, and the government does not dispute, that the confidential informant requested that the first sale take place inside the condominium. The second sale, on July 20, was also made in Levin's home—it is unclear who specified the location. (We are not here concerned with a third small sale which took place outside the condominium.) The confidential informant telephoned Levin frequently after the sales to request that Levin make further sales. Levin declined.

Levin was arrested by the Suffolk County Police on October 6, 1988 on charges of criminal sale of a controlled substance based on the above transactions. The condominium was searched. No drugs, weapons, large amounts of cash, drug paraphernalia, or drug records were discovered.

Subsequent to his arrest, Levin began cooperating with law enforcement authorities, and later pleaded guilty in the Supreme Court of the State of New York for the County of Suffolk to attempted criminal sale of a controlled substance. He received a probationary sentence and a small fine.

On November 10, 1988, the United States government instituted an *in rem* forfeiture action against Levin's condominium, pursuant to 21 U.S.C. § 881(a)(7). On November 14, 1988 the government obtained an *ex parte* seizure warrant for the premises. Pursuant to the warrant, the United States Marshals Service seized the property, simultaneously searching it extensively. No indication of narcotics activity was found.

After timely filing a claim of ownership to the property, Levin moved to dismiss the complaint. The Government cross-moved for summary judgment of forfeiture.

In a thoughtful, well-written opinion filed September 20, 1990, reported at 747 F.Supp. 173 (E.D.N.Y.1990), Judge Nickerson denied Levin's motion to dismiss and granted the government's cross-motion for summary judgment of forfeiture. The district court ruled that the property was properly subject to forfeiture pursuant to the terms of 21 U.S.C. § 881(a)(7). The district court also rejected Levin's arguments that the application of the forfeiture provision in his case violated the Fifth and

Eighth Amendments to the United States Constitution. Judgment of forfeiture was entered.

Levin then filed this appeal.

## DISCUSSION

Levin raises four arguments: (1) the forfeiture is not authorized under the statute, 21 U.S.C. § 881(a)(7); (2) the forfeiture violates substantive due process; (3) the Double Jeopardy Clause of the Fifth Amendment prohibits the forfeiture; and (4) the Eighth Amendment prohibits the forfeiture.

### A. *Forfeiture under 21 U.S.C. § 881(a)(7)*

■ We turn first to the statutory argument. 21 U.S.C. § 881(a)(7) provides for the forfeiture of real property "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a violation of the narcotics laws punishable by more than one year's imprisonment. As we observed in *United States v. 141st Street Corp.*, 911 F.2d 870, 878 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991), "Congress intended forfeiture to be a powerful weapon in the war on drugs." As such, the statute is broadly drafted to reach a wide array of property which may be used to accomplish illegal purposes. Levin contends, however, that the statute must be read to require the proving of a "substantial connection" between the property and the crime. We disagree.

■ In *United States v. Premises & Real Property at 4492 S. Livonia Rd.*, 889 F.2d 1258, 1269 (2d Cir.1989), *reh'g denied,* 897 F.2d 659 (1990), we explicitly rejected this argument, stating that the statute requires only a "nexus" between the drug activity and the property. Here, the drug activity was sufficiently connected with the property to bring the property within the purview of the statute. As a situs for the sales, the property "facilitated" them by permitting them to be conducted in an atmosphere of relative privacy. *See United States v. Premises Known as 3639–2nd St., N.E.*, 869 F.2d 1093, 1096 (8th Cir.

1989), *reh'g denied*, 1989 WL 19595, 1989 U.S.App. LEXIS 5212 (1989). We note further that the statute permits forfeiture to be predicated upon only a small quantity of drugs. *See also United States v. One 1986 Mercedes Benz*, 846 F.2d 2, 5 (2d Cir.1988) *(per curiam )*. We therefore agree with the district court that the property was subject to forfeiture under the terms of the statute.

### B. *Substantive Due Process*

■ Levin next argues that the civil forfeiture of his residence violates substantive due process. Substantive due process protects the individual "against arbitrary action[s] of government," *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (citation omitted). We disagree with Levin here as well. The Supreme Court has long held that a forfeiture of property used for illegal purposes may be deemed unduly oppressive only when the owner of the forfeited property is innocent of the wrongful activity, uninvolved and unaware of it, and has done "all that reasonably could be expected to prevent the proscribed use of his property." *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689, 94 S.Ct. 2080, 2095, 40 L.Ed.2d 452, *reh'g denied,* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974). Similarly, in *United States v. One Tintoretto Painting Entitled "The Holy Family with St. Catherine & Honored Donor"*, 691 F.2d 603 (2d Cir.1982), we found that due process concerns were raised by the forfeiture of a painting only because the owner arguably acted " 'in good faith and without negligence.' " 691 F.2d at 607 (quoting *United States v. One 1936 Model Ford V–8 DeLuxe Coach*, 307 U.S. 219, 236, 59 S.Ct. 861, 869, 83 L.Ed. 1249 (1939)).

Here, Levin committed a crime inside the condominium. Even if the informant was responsible for suggesting the condominium as the site of the drug transaction, Levin can hardly be said to have done everything possible to prevent the property's use for illegal purposes. Under *Cale-*

*ro–Toledo,* the forfeiture therefore does not offend substantive due process.

C. *Other Constitutional Arguments: Fifth Amendment Double Jeopardy and Eighth Amendment*

    1. *Classifying Civil Sanctions as Punishment*

Levin's arguments that the forfeiture violates the Double Jeopardy Clause of the Fifth Amendment and the Eighth Amendment's bar on Cruel and Unusual Punishment and Excessive Fines are predicated upon his contention that the forfeiture is in reality a criminal penalty and, as such, is subject to constitutional limitations on punishment. *See generally* Pratt & Petersen, *Civil Forfeiture in the Second Circuit,* 65 St. John's L.Rev. 653, 668–70 (1991) (discussing "disturbing implications" of courts' failure to regard civil forfeiture as punishment). He argues that the forfeit of his $68,000 interest in the condominium—and the resultant loss of his home—as a consequence of a sale of $250 worth of cocaine must be seen as punishment, since it, or at least some part of it, cannot be said to serve proper civil purposes.

Levin's point here is not that Section 881(a)(7) is properly read as a penal, rather than civil, enactment, *see generally United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, *reh'g denied,* 448 U.S. 916, 101 S.Ct. 37, 65 L.Ed.2d 1179 (1980); *United States v. $2500 in U.S. Currency,* 689 F.2d 10, 14 (2d Cir.1982), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984), but rather that the application of the statute in the circumstances of his case is punishment. Levin relies on *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in which the Supreme Court found that a civil sanction imposed following a criminal sentence for filing false claims violated the Double Jeopardy Clause's proscription of multiple punishments.[1]

In *Halper,* an employee of a medical laboratory filed sixty-five false claims for Medicare reimbursement, each of which overstated the amount reimbursable to the lab by $9, resulting ultimately in a fraud on the government of $585. Under the False Claims Act, 31 U.S.C. §§ 3729–31, the government sought a civil penalty of $2000 plus double damages for each violation of the Act. This subjected Halper to a penalty of over $130,000, "exponentially greater than the amount of the fraud, and ... also many times the amount of the Government's total loss." 490 U.S. at 445, 109 S.Ct. at 1900. Despite the sanction's imposition in a civil proceeding, pursuant to a civil enactment, the Justices unanimously recognized that the sanction as applied could be "so extreme and so divorced from the Government's damages and expenses as to constitute punishment." 490 U.S. at 442, 109 S.Ct. at 1898.

The Court applied a "rule of reason" to the sanction. Finding it "overwhelmingly disproportionate," and without "rational relation" to the purported goal of compensating the government, the Court presumed the sanction to be punitive. 490 U.S. at 449–50, 109 S.Ct. at 1902. It then shifted the burden to the government to prove otherwise, through an "accounting of [its] damages and costs."[2] 490 U.S. at 449–50, 109 S.Ct. at 1902.

The Court cautioned, however, that the burden of accounting for a civil sanction would fall on the government only in the "extreme case," and that leeway was to be given the government's attempt to achieve "rough remedial justice," particularly in

---

1. The *Halper* Court stated that multiple sanctions such as those imposed on Halper would not violate the Double Jeopardy Clause if they were imposed in a single proceeding. *Halper,* 490 U.S. at 440–41, 447, 109 S.Ct. at 1897–98, 1901; *see North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); Note, *United States v. Halper, Punitive Civil Fines, and the Double Jeopardy and Excessive Fines Clauses,* 66 N.Y.U.L.Rev. 112, 137–39 (1991).

2. The Court concluded provisionally that the $130,000–plus sanction was punitive, based on the district court's estimate of the government's costs and damages at $16,000. The Court then remanded the case, however, giving the government an opportunity to prove that its costs and damages in fact exceeded the district court's estimate.

view of quantifying the "precise amount of the Government's damages and costs." *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902; *see also United States ex rel. Marcus v. Hess*, 317 U.S. 537, 550–51, 63 S.Ct. 379, 387, 87 L.Ed. 443, *reh'g denied*, 318 U.S. 799, 63 S.Ct. 756, 87 L.Ed. 1163 (1943). As a general rule, therefore, particularly where few statutory violations are involved, the Court stated that it would not disturb a "fixed penalty plus double damages provision," together with "reasonable liquidated damages clauses." *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902.

■ Where an accounting is appropriate, however, *Halper* requires a district court to compare the government's proven damages and costs against the sanction the government seeks to impose. Following an accounting, a sanction must be classified as punitive when the size of the sanction can not fairly be attributed to remedial purposes, "but rather can only be explained as *also* serving either retributive or deterrent purposes." 490 U.S. at 448, 109 S.Ct. at 1902 (emphasis added). The amount in excess must be deemed punishment.

■ The classification of a sanction as punitive under *Halper* does not automatically transform the sanction proceeding into a criminal prosecution, with all the attendant procedural safeguards required by the Constitution. For example, the applicability of Sixth Amendment protections to statutory proceedings and the standard of proof used in those proceedings are determined not with reference to the particular sanction ultimately imposed, but rather by considering the proceeding's inherent nature, identified through recourse to "statutory language, structure, and intent." *Halper*, 490 U.S. at 447, 109 S.Ct. at 1901 (citing *United States v. Ward*, 448 U.S. at 248–51, 100 S.Ct. at 2641–43).

■ Nonetheless, certain constitutional protections do attach when an individual is subjected to a "civil" sanction that in effect is punishment. Such an individual is protected against multiple punishments under the Double Jeopardy Clause, because that constitutional protection is "intrinsically personal," serving a "humane" interest.

*See Halper*, 490 U.S. at 447, 109 S.Ct. at 1901 (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. at 554, 63 S.Ct. at 389 (Frankfurter, J., concurring)).

■ Furthermore, we agree with Levin that Eighth Amendment protections attach when an individual is subjected to a civil sanction classified as punitive under *Halper*. Like the Double Jeopardy Clause, the Eighth Amendment is a "personal" and "humane" limitation on the government's ability to punish an individual. Although the Supreme Court did not explicitly so rule in *Halper*, in *Browning–Ferris Industries, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), decided shortly after *Halper*, the Court stated that *Halper* "implies that punitive damages awarded to the Government in a civil action may raise Eighth Amendment concerns...." 492 U.S. at 275 n. 21, 109 S.Ct. at 2920 n. 21; *see also Ingraham v. Wright*, 430 U.S. 651, 669 n. 37, 97 S.Ct. 1401, 1411 n. 37, 51 L.Ed.2d 711 (1977) ("Some punishments, though not labeled 'criminal' by the State, may be sufficiently analogous to criminal punishments in the circumstances in which they are administered to justify application of the Eighth Amendment."); Note, *Crossing the Line Between Rough Remedial Justice and Prohibited Punishment*, 65 Wash.L.Rev. 437 (1990).

2. *Implications of* United States v. Halper *for Civil Forfeitures*

■ We read *Halper* to apply to civil forfeitures. Forfeitures that are overwhelmingly disproportionate to the value of the offense must be classified as punishment unless the forfeitures are shown to serve articulated, legitimate civil purposes. *See* 21 U.S.C. § 881 (forfeiture provisions). Among those purposes, the government may use *in rem* forfeiture to remove instrumentalities of crime from general circulation and prevent further illicit use of harmful objects, a goal springing from the historic fiction underlying forfeiture that "an instrument of harm is itself culpable." *United States v. Certain Real Property*

*and Premises Known as 38 Whalers Cove Drive, Babylon, New York*, 747 F.Supp. 173, 177 (E.D.N.Y.1990) (hereinafter *38 Whalers Cove Drive* ); *see One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965); *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 363, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984); *Calero–Toledo v. Pearson Yacht Leasing Co., supra.* We have also stated that forfeiture of an object may substitute for a civil fine, "imped[ing] the success of the criminal enterprise by eliminating its resources and instrumentalities," *United States v. $2500 in U.S. Currency*, 689 F.2d at 13; *see Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. at 687, 94 S.Ct. at 2094. The government may also use forfeitures to compensate the government's investigation and enforcement expenditures, in addition to any damages the government may suffer directly as a result of criminal acts, essentially as a form of "liquidated damages" for harm caused by an individual wrong-doer. *See* 21 U.S.C. § 881(e); *One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972) (per curiam); *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. at 687 & n. 26, 94 S.Ct. at 2094 & n. 26.

■ Civil forfeitures do not retain their civil character if they are used in order to achieve deterrence or retribution, however. "Retribution and deterrence … are not legitimate nonpunitive governmental objectives." *Bell v. Wolfish*, 441 U.S. 520, 539 n. 20, 99 S.Ct. 1861, 1874 n. 20, 60 L.Ed.2d 447 (1979). We acknowledge that otherwise proper forfeiture actions may have the collateral effect of deterring future drug offenders. *See 38 Whalers Cove Drive*, 747 F.Supp. at 179. This fact alone will not render a particular forfeiture punitive in nature. Rather, *Halper* requires us to examine whether the forfeiture at hand is fully justified by the civil and remedial purposes it ostensibly serves, or whether it or a portion thereof can be explained only with reference to punitive goals.

■ In evaluating whether a forfeiture under § 881(a)(7) serves its ostensible goals, we focus upon the effects on the claimant who has violated the statute, despite the fact that the forfeiture actions are brought *in rem.* *See Livonia Road*, 889 F.2d at 1270. *See also United States v. Huber*, 603 F.2d 387, 397 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (for Eighth Amendment purposes, "there is no substantial difference between an *in rem* proceeding and a[n *in personam* criminal] forfeiture proceeding brought directly against the owner"); *cf. United States v. U.S. Coin & Currency*, 401 U.S. 715, 718, 91 S.Ct. 1041, 1043, 28 L.Ed.2d 434 (1971). Where an individual has suffered severe penalties in an *in rem* forfeiture proceeding, it is particularly appropriate to address the substance of that proceeding. *See United States v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289, 1299 (7th Cir. 1990) (Cudahy, J., concurring); *United States v. Premises Known as 3639–2nd St., N.E.*, 869 F.2d at 1098 (Arnold, J., concurring).

■ We therefore hold that a forfeiture under 21 U.S.C. § 881(a)(7) will not be presumed punitive where the seized property has been used substantially to accomplish illegal purposes, so that the property itself can be said to be "culpable" or an instrumentality of crime. *See Dobbins' Distillery v. United States*, 96 U.S. 395, 401, 24 L.Ed. 637 (1878) (offense "attached primarily" to distillery). Where the seized property is not itself an instrumentality of crime, however, *and* its total value is overwhelmingly disproportionate to the value of controlled substances involved in the statutory violation, there is a rebuttable presumption that the forfeiture is punitive in nature. In using the value of the drugs as a rough measuring stick, we follow the *Halper* Court's decision to evaluate the sanction against the value obtained by Halper's criminal conduct. We also note that the Sentencing Commission, through the Guidelines, has utilized the weight of drugs and, implicitly, their value to differentiate between punishments for violations of the narcotics laws.

The government may then account under *Halper* in order to show that the forfeiture serves legitimate civil goals. The government may present its costs of investigation and detection, as well as other costs and damages attributable to the criminal misconduct of the claimant. *See* 21 U.S.C. § 881(e)(3)(A) (relating transfer of forfeited property to state agency to "total law enforcement effort with respect to the [individual] violation of law on which the forfeiture is based"). *See United States v. Hall,* 730 F.Supp. 646, 655 (M.D.Pa.1990); *Kvitka v. Board of Registration in Medicine,* 407 Mass. 140, 145, 551 N.E.2d 915 (1990) (examining governmental losses and harm to identifiable victims directly caused by physician's fraud), *cert. denied,* — U.S. —, 111 S.Ct. 74, 112 L.Ed.2d 47 (1990). The assessment of costs and damages must be individualized. A reasonable allocation of more generalized enforcement costs—in the nature of overhead—may also be allowed. The allocation must not be incommensurate with the portion of the overall enforcement problem represented by the offense at hand. While we are extremely sympathetic to the need to address our nation's serious narcotics problems, we do not believe that a disproportionately large forfeiture can be reasonably justified as a civil fine as opposed to punishment by placing full responsibility for the "war on drugs" on the shoulders of every individual claimant. This is particularly so where the individual claimant's violations are relatively minor. *See 38 Whalers Cove Drive,* 747 F.Supp. at 180; *see also Halper,* 490 U.S. at 449, 109 S.Ct. at 1902 (compensable portion of the "costs and damages" suffered by the government was that directly caused by the defendant); *United States v. Bizzell,* 921 F.2d 263, 267 (10th Cir.1990); *compare United States v. A Parcel of Land with a Building Located Thereon at 40 Moon Hill Road,* 884 F.2d 41, 44 (1st Cir.1989). Following the accounting, the trial court may then determine whether the government has carried its burden of showing that the sanction is entirely assignable to civil purposes or whether part or all of the sanction is designed to serve punitive purposes.

### 3. *Application of* United States v. Halper *to the Instant Case*

With these principles in mind, we turn to the instant case. We consider first whether the forfeiture could be considered a removal of an "instrumentality of crime" from general circulation. The government apparently concedes, however, that forfeiture is not sought on this ground. *See 38 Whalers Cove Drive,* 747 F.Supp. at 178 ("The government makes no suggestion that Levin's condominium was contraband or somehow itself culpable."). We therefore do not address that argument.

Instead, the government's sole contention here is that the sanction serves other civil goals such as compensation. Following *Halper,* we therefore examine whether the forfeiture is disproportionately large, relative to the value of the drug transactions which violated 21 U.S.C. § 881(a)(7). The forfeiture of Levin's interest in the residence was close to three hundred times the total value of cocaine sold inside it. We find as a matter of law that the forefeiture is overwhelmingly disproportionate compared to the value of the relevant drug transactions, and that therefore a rebuttal presumption that the forfeiture is punitive in nature is created.

If the resulting attachment of constitutional protections under *Halper* would have any effect on the result of this case, we would be inclined to vacate Judge Nickerson's judgment of forfeiture and remand the case to permit the government an opportunity to rebut the presumption by showing through an accounting of its costs that the forfeiture is civil in nature. However, assuming *arguendo* that following a government accounting the district judge would conclude that the forfeiture, even up to the full amount of Levin's equity interest in the condominium, amounted to punishment and not a civil sanction, the judgment would still survive scrutiny. For reasons that we now turn to, the forfeiture does not violate the constitutional limits on

punishment set by the Double Jeopardy Clause and the Eighth Amendment.

### a. *Double Jeopardy Clause*

Levin maintains that because the forfeiture proceeding followed his prosecution, plea of guilty, and sentencing in state court, the forfeiture violates his Double Jeopardy Clause right to be free from multiple punishments.

■■■ We disagree. Even assuming that the forfeiture is a criminal penalty, the Double Jeopardy Clause prohibits two criminal punishments for the same offense only when they are sought by the same sovereign government. The Double Jeopardy Clause is inapplicable when separate governments prosecute the same defendant, for the defendant has offended both sovereigns. *Heath v. Alabama,* 474 U.S. 82, 87–89, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985).

■■■ Levin argues on appeal that his case falls within an exception to this "dual sovereignty" doctrine. The Double Jeopardy Clause may be violated despite single prosecutions by separate sovereigns when one "prosecuting sovereign can be said to be acting as a 'tool' of the other." *United States v. Aboumoussallem,* 726 F.2d 906, 910 (2d Cir.1984) (quoting *Bartkus v. Illinois,* 359 U.S. 121, 123, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959)); *United States v. Jordan,* 870 F.2d 1310, 1312 (7th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989); *United States v. Russotti,* 717 F.2d 27, 31 (2d Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984). This exception is not triggered simply by cooperation between the two authorities, however. The state government must have effectively manipulated the actions of the federal government, so that federal officials retained little or no independent volition. *United States v. Russotti,* 717 F.2d at 31; *United States v. Liddy,* 542 F.2d 76, 79 (D.C.Cir.1976). Levin contends only that the Suffolk County Police Department will receive a portion of the forfeiture proceeds. That distribution is apparently pursuant to statute. 21 U.S.C. § 881(e)(1)(A) authorizes the Attorney General to transfer part or all of the forfeited personal property to "any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property." But the fact that the Attorney General may choose to share the forfeited property with a local law enforcement agency is inadequate to show that the United States government, which no doubt has its own interest in the proceeds, is here acting as a "cover" for the Suffolk County Police Department. Nor does the receipt by the state enforcement agency of part of the proceeds implicate the state in any punishment by virtue of the forfeiture since the forfeiture is being effected by the United States government.

### b. *Eighth Amendment*

■■■ Levin asserts that the forfeiture violates the Cruel and Unusual Punishment Clause of the Eighth Amendment, or its Excessive Fines Clause.[3] We find the arguments without merit. The Eighth Amendment proscribes only extreme punishments. Even assuming that the entire amount of the forfeiture here is punishment, it does not violate the outer confines set by the Eighth Amendment.

■■■ The Cruel and Unusual Punishment Clause prevents the imposition of a punishment which is "grossly disproportionate" to the crime committed. *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3010–11, 77 L.Ed.2d 637 (1983). Three factors are relevant to this inquiry: (1) the inherent gravity of the offense; (2) the sentences imposed for similarly grave offenses in the same jurisdiction; and (3) sentences imposed for the same crime in other jurisdictions. We need not linger over the first factor. Levin does not dispute his participation in two sales of cocaine. The Supreme Court has recognized

---

**3.** Levin appears to mention, but does not press, the possibility that the Excessive Fines Clause might apply to sanctions purely civil in nature. *See Browning–Ferris Industries, Inc. v. Kelco Disposal, Inc.,* 492 U.S. at 263–64, 275, 109 S.Ct. at 2913, 2920. We accordingly decline to address the issue.

the serious threat to individuals and society posed by drug offenses in the context of an Eighth Amendment analysis. *See Harmelin v. Michigan,* — U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (upholding mandatory life sentence for possession of 672 grams of cocaine); *id.* 111 S.Ct. at 2698 (Scalia, J.) (Michigan legislature may take appropriate measures to address "the situation on the streets of Detroit"); *id.* at 2706 (Kennedy, J.) (petitioner's drug offense threatened "grave harm"); *see also National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 668, 109 S.Ct. 1384, 1392, 103 L.Ed.2d 685 (1989) (drug use and distribution one of "greatest problems affecting the health and welfare of our population").

Further, the punishments meted out by the federal government and other jurisdictions for similar crimes indicate that the forfeiture of Levin's condominium is not aberrational. Federal law authorizes a sentence of twenty years and a fine of $1,000,000 for the distribution of cocaine in an amount less than 500 grams. 21 U.S.C. § 841. The Sentencing Guidelines assign a Base Offense Level of 12 to transactions involving less than 25 grams of cocaine. Depending upon criminal history, a defendant who had distributed the same amount of cocaine as Levin would presumptively be fined $30,000 and receive a sentence of 10 to 37 months. The state courts in this circuit authorize punishments on a similar scale. Under New York law, a defendant who had distributed the same quantity of cocaine as Levin would be exposed to 8 years and 4 months imprisonment and $50,000 in fines. N.Y.Penal Law §§ 220.41, 70.00, 80.00. Under Vermont law, a defendant distributing 2.5 grams or more of cocaine (but less than one ounce) may receive five years of imprisonment and a fine of $100,000. Vt.Stat.Ann. tit. 18, § 4231. Connecticut law authorizes a sentence of 20 years and a fine of $10,000 for distribution of more than 0.5 grams of cocaine. Conn. Gen.Stat. § 21a–278(b); § 53a–41. We recognize that these are merely possible sentences and are not conclusive as to what a court might do in an individual case. Nonetheless, we infer from the statutes that the imposition of the equivalent of a $68,000 fine in this case, while large, is not a grossly disproportionate punishment within the meaning of Eighth Amendment jurisprudence.

■ As to the Excessive Fines Clause, the Supreme Court has provided no guidance, except to observe that fines must be closely scrutinized because they benefit the government. Unlike other forms of punishment that impose costs on government, fines create revenue. *Harmelin v. Michigan,* 111 S.Ct. at 2693 n. 9 (Scalia, J.); *cf. Browning–Ferris Industries, Inc. v. Kelco Disposal, Inc.,* 492 U.S. at 275, 109 S.Ct. at 2920 (Excessive Fines Clause possibly applicable to revenue-raising efforts through fines, other payments, or forfeitures). We need not decide at exactly what point a fine or forfeiture might violate the Excessive Fines Clause, for wherever such a line could be drawn, this forfeiture would be proper. Judging from the penal laws of the United States and the various states mentioned above, a fine of many thousands of dollars for a minor drug offense is not beyond the pale. *Cf. Calero–Toledo v. Pearson Yacht Leasing Co., supra* (upholding against due process challenge seizure of innocent owner's $19,800 yacht upon which marijuana cigarette was discovered). We conclude that the forfeiture, if truly a punishment, does not violate the Eighth Amendment.

## CONCLUSION

The judgment of forfeiture is affirmed.