UNITED STATES of America, Plaintiff,

v.

**ALL RIGHT, TITLE AND INTEREST IN REAL PROPERTY AND A BUILDING KNOWN AS 16 CLINTON STREET, NEW YORK, NEW YORK, and Leasehold Interests Therein Known as Brunilda Luna Fabric Store and TTT Grocery and Candy Store, Defendants-inrem.**

No. 89 Civ. 4932 (CHT).

United States District Court,
S.D. New York.

March 5, 1992.

---

**1.** The Court notes that the same problems of proof exist in other types of litigation, *e.g.,* asbestos litigation.

See also 730 F.Supp. 1265.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Adria De Landri, of counsel), New York City, for plaintiff.

Jerald Rosenthal (Jerald Rosenthal, of counsel), Woodside, N.Y., for claimants.

## OPINION

TENNEY, District Judge.

This is a forfeiture action brought by the United States of America ("the government"), pursuant to 21 U.S.C. § 881(a)(7) (1988), against real property based on that property's use to facilitate narcotics transactions. A bench trial was held on January 7–8, 1992, during which the court found in favor of the government.

16 Clinton Street ("the property") is a five-story brick building with eight apartments and two stores, located on the Lower East Side of Manhattan. David and Nathan Shuchat are the owners of the property. On June 27, 1989, pursuant to a seizure warrant issued by United States Magistrate Judge Michael H. Dolinger, United States Marshals seized the property, including the leasehold interests on the first floor, known as the Brunilda Luna Fabric Store ("south store") and the TTT Grocery and Candy Store ("north store"). On July 19, 1989, the Government filed a verified complaint against the defendant in rem, and on August 11, 1989, David and Nathan Shuchat filed a notice of claim for the return of the property.

Claimants argued in their papers and at trial that the government had not sustained its burden of showing a substantial connection between themselves and the illegal activity claimed to have occurred at the property and that the seizure of the property violated the Fifth and Eighth Amendments to the United States Constitution. For the reasons set forth below, the court found in favor of the government.

## FINDINGS OF FACT

1. David Shuchat and his brother Nathan Shuchat are the joint owners of five pieces of property on the Lower East Side, including 16 Clinton Street. Trial transcript ("T.") 93–94, 137. The Shuchat brothers have been in the real estate business for approximately thirty years. Joint Pre–Trial Order 10; T. 108.

2. The Shuchats were not only aware of the pervasive drug-trafficking taking place on the Lower East Side, but had experienced problems in the past with the use of several of their own buildings for illegal drug activities. T. 127, 129–30, 132–33. For example, a grocery store leasing space in another of their buildings on the Lower East Side was closed by the City of New York for engaging in illegal drug activity. Subsequent tenants of that space had their store's operation and lease overseen by the City. T. 133. In addition, another one of the Shuchats' properties was without a front door for a period of time during which drug addicts had free access to the building and its hallways. T. 196.

3. David Shuchat lives four blocks from the property. T. 108. His brother Nathan Shuchat lives one and a half blocks from the property. T. 140.

4. Both brothers were responsible for collecting the rent for the property. Nathan Shuchat would collect the rent for three of the upstairs apartments, and David Shuchat would collect the rent for the other three apartments and the two stores.[1] Each brother would collect his portion of the rents by visiting the premises at some point during the first half of each month. Periodically, however, a tenant would be late with the rent, requiring additional visits to the property at various times throughout the month. T. 96, 104, 112, 142.

5. Because the property did not have a superintendent, David Shuchat would also have to visit the property from time to time in order to give repair people access to the appropriate facilities. T. 96–97.

6. The New York City Police Department ("Police Department") engaged in a four month undercover investigation of narcotics activity at the property. T. 12–75 *passim.*

---

**1.** David Shuchat collected the rent for the north store at the north store, but collected the rent for the south store at 127 Stanton Street. T. 96.

7. This investigation revealed a heroin and cocaine distribution network operating from both the north and south stores on the property. *Id.*

8. The investigation led to the discovery of other narcotics distribution locations at 127 Stanton Street and 159 Essex Street, Apartment 3B. *Id.*

9. Customers visited the East Village Grocery and Deli at 127 Stanton Street and paid for an amount of heroin or cocaine. In exchange, the customer received a receipt which he or she would then take to the south store at the property where it would be exchanged in the rear for heroin or cocaine. T. 13, 59–60; Deposition of Susan Chang ("D.") 38.[2]

10. Virtually no regular, legal business was conducted at the south store. Its customers were there for the purpose of buying drugs. D. 48.

11. In November and December 1988, undercover officers from the Police Department purchased large quantities of heroin from the south store. T. 15–16, 18–19, 23.

12. On February 14, 1989, a search warrant was executed at both the south store and 127 Stanton Street, leading to multiple arrests. T. 32, 34.

13. As a result of the police activity in the south store, the premises were left in a ransacked and damaged condition. T. 169.

14. The south store was closed for several months after the execution of the search warrant. When it reopened, it had been painted and some construction work had been performed on the interior. T. 47.

15. Upon its reopening, the south store was sparsely stocked with merchandise. T. 43.

16. In March 1989, undercover officers purchased cocaine on three occasions at the north store. T. 66, 68–69.

17. During the undercover surveillance of the north store, it was noted that there were no groceries in the store and that no sodas or any other provisions were being sold. T. 70.

18. On March 14, 1989, a search warrant was executed at the north store resulting in the arrest of three individuals and the seizure of cocaine, marijuana, and pre-marked "buy money" used by undercover officers. T. 71–75.

19. The north store was also left in a completely disheveled state after the search on its premises. T. 72–75.

20. The execution of each search warrant involved many uniformed officers and several police vehicles, making its performance quite visible to anyone in the vicinity of the property, including any of the tenants who were present in their apartments at the time. T. 33–38; 71–75.

21. On March 30, 1989, an article published in *The New York Times* reported the extent to which Lower East Side grocery stores operate as "fronts" for narcotics dealing organizations. Specifically mentioned as a drug front location was 16 Clinton Street. T. 40–41; Exhibit ("Ex.") S1.

22. On June 16, 1989, Deputies of the United States Marshals Service interviewed residents and neighbors in the area of the property who indicated that the two stores were open only a few hours a day and were sometimes closed for days at a time. T. 82–83.

23. Susan Chang, an employee of the "East Village Deli and Grocery," located at 127 Stanton Street, became a confidential informant for the government after she was arrested during the execution of the February 14, 1989 search warrant at that location. T. 48.

24. During the summer of 1988, David Shuchat met with Ms. Chang and Dominick Maldonado, another person affiliated with the grocery at 127 Stanton Street, and agreed to have Maldonado and his partners take over the lease for the south store. David Shuchat and Maldonado agreed that the store would continue to operate as a "smoke shop," meaning a store that dealt in marijuana. D. 27. In addition to renting the south store, the owners of the East Village Deli and Grocery also rented the

**2.** This deposition was admitted into evidence at trial as Exhibit W.

cellar at 16 Clinton Street and received permission from David Shuchat to install a back door and a dummy wall in the south store in order to facilitate escape from the police. D. 32–33. In July of 1988, David Shuchat had a further discussion with the owners of the East Village Deli and Grocery about whether the beams at the property would support the construction of an extra flight of stairs leading to the basement from the store. D. 40–42.

25. David Shuchat accepted a kickback in the form of additional unreported rent for permitting the illegal sale of marijuana on the premises of the south store and demanded additional money when he discovered that the store was also selling heroin and cocaine. T. 49, D. 54.

26. A tenant complained to David Shuchat about the smells of ether and marijuana emanating from the north store. T. 170.

27. Nathan Shuchat observed the search of the south store from across the street. T. 168.

28. The Shuchats' testimony that they made no effort to find the lessees of the closed stores after the search warrants were executed and that they never made any inquiries of the tenants in the building as to why the stores were no longer open for business or paying rent is not credible. T. 125.

29. The Shuchats' assertion that they were never told by any of the property's other tenants that there had been considerable police activity in the building is also not believable. T. 142.

## DISCUSSION

### A. *Jurisdiction*

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1355, 1395(b); Rule C, Supplemental Rules for Certain Admiralty and Maritime Claims.

### B. *The Government's Burden of Proof*

■ Section 881(d) of Title 21 provides that the burden of proof for forfeitures effected under the customs laws shall be applied to forfeitures effected under Section 881(a)(7). The customs laws apportion the relative burdens of the parties as follows: "the burden of proof shall be upon [the] claimant ... *Provided,* That probable cause shall be first shown for the institution of such suit of action, to be judged of by the court...." 19 U.S.C. § 1615 (emphasis in original). Thus, to establish a *prima facie* case for forfeiture under 21 U.S.C. § 881(a)(7), the Government must demonstrate "probable cause to connect the property with narcotics activity." *United States v. 4492 South Livonia Road,* 889 F.2d 1258 (2d Cir.1989) (quoting *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 (2d Cir.1986)). To meet the probable cause requirement, the government need only have reasonable grounds, rising above the level of mere suspicion, to believe that the property is subject to forfeiture. *United States v. 303 W. 116th St.,* 901 F.2d 288, 290–91 (2d Cir.1990); *United States v. 15 Black Ledge Drive,* 897 F.2d 97, 101 (2d Cir.1990); *Livonia Road,* 889 F.2d at 1267; *Banco Cafetero,* 797 F.2d at 1160.

■ The Second Circuit has held that Section 881(a)(7) requires a showing of only a "nexus" between the drug activity and the property. *See United States v. 38 Whalers Cove Drive,* 954 F.2d 29, 33 (2d Cir.1992); *Livonia Road,* 889 F.2d at 1269 (citing *United States v. One 1974 Cadillac Eldorado,* 575 F.2d 344, 345 (2d Cir.1978) (per curiam) and *United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421, 423 (2d Cir.1977)). In addition, the government may establish probable cause by either direct or circumstantial evidence. *Livonia Road,* 889 F.2d at 1269; *United States v. $2,500 in United States Currency,* 689 F.2d 10, 16 (2d Cir.1982), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).

■ The court finds that the government introduced ample evidence to establish a "nexus" between the property and the illegal activity and has, therefore, met its burden of establishing a *prima facie* case for the forfeiture. *See* Findings of Fact 6–7, 9–12, 15–18, 24–26.

### C. *Claimants' Burden of Proof*

■ Once the government establishes probable cause for the forfeiture, the claimant bears " 'the ultimate burden of proving that the factual predicates for forfeiture have not been met.' " *303 W. 116th St.*, 901 F.2d at 291 (quoting *Banco Cafetero*, 797 F.2d at 1160). The claimant must prove either that the property was not used unlawfully or that the illegal use was without his knowledge or consent. *United States v. 141st St. Corp.*, 911 F.2d 870, 876 (2d Cir.1990); *303 W. 116th St.*, 901 F.2d at 291; *15 Black Ledge Drive*, 897 F.2d 97, 102 (2d Cir.1990) (upholding summary judgment for government when drug activity was readily apparent despite claimant's contention that she had no knowledge of husband's drug activities because "on these facts such a bare denial [of knowledge] was insufficient to create a genuine triable issue").

■ Claimants do not seem to dispute that the property was used unlawfully, but deny that they had any knowledge or reason to believe that their building was being used in an unlawful manner. Because claimants contended steadfastly that they had no knowledge of the illegal activity, they did not present any specific evidence of lack of consent. Instead, they relied on the argument that they could not consent to what they did not know. For the reasons discussed below, the court rejects their "innocent owner" defense.

Claimants live in the vicinity of the property and are experienced landlords. They were cognizant of the pervasive drug trafficking in the neighborhood and had even experienced prior problems with one of their rental properties being used for illicit drug purposes. Both of the Shuchats had frequent contact with the building and its tenants. Therefore, putting aside the ample direct evidence that claimants did indeed have knowledge of the uses to which their stores were being put, the court cannot accept their blanket assertions that had they only known of the problems, they would have evicted the wrongdoers.

It is clear from the evidence adduced at trial that drug trafficking was an inescapable conclusion to anyone who observed the two locations for any period of time. Here, both brothers visited the property several times a month. David Shuchat personally collected the rent at the north store and collected the rent for the south store at 127 Stanton Street, another drug locale run by the tenants of the south store.

The Shuchats deny having any knowledge that there was police activity in the stores prior to the property being seized, yet the searches were highly visible operations and the stores were physically disrupted in such a manner that could not escape notice—most of all by a landlord visiting the property to collect his rent. In addition, the stores were closed for several weeks following the searches, surely an event that would have signalled to the most "innocent" of landlords that something was amiss with his building.

The Shuchats contend that when they visited the building to collect the rent, none of the other tenants mentioned either the February or March police activity in the stores. The court does not find this to be plausible. The court also has trouble accepting the Shuchat's claim that, even though the stores had been ransacked and closed and the tenants had mysteriously vacated the building, they made no inquiries as to what had taken place in the preceding weeks. Only a landlord who wished to intentionally remain ignorant of the events in his buildings would engage in such disinterested behavior. Finally, there was the clear and credible testimony of Vanessa Yancy, a resident of the building, that she saw Nathan Shuchat across the street from the property actually observing one of the searches while it was in progress.

The government's evidence against the Shuchats concluded with the testimony of Susan Chang, a government informant, that David Shuchat had knowledge of and condoned the illegal activity taking place at the south store and the testimony of Vanessa Yancy that she had complained to David Shuchat about the odors of marijuana and ether emanating from the north store. Both of these witnesses directly

refuted claimants' "innocent owner" defense.

### D. *Claimants' Constitutional Arguments*

Claimants argued that forfeiture of the entire leasehold, based on the illegal activities which took place in the two stores, violates the Fifth and Eighth Amendments to the Constitution. A reading of this Circuit's opinions in *United States v. 4492 South Livonia Road*, 889 F.2d 1258 (2d Cir.1989) and *United States v. 38 Whalers Cove Drive*, 954 F.2d 29 (2d Cir.1992), however, convinces the court that there is no constitutional impediment to the forfeiture of claimants' property.

### CONCLUSION

The above constitutes the court's Findings of Fact and Conclusions of Law, pursuant to Fed.R.Civ.P. 52(a), supporting the court's decision in favor of the government on January 8, 1992.