UNITED STATES of America, Appellee,

v.

Hilda AMIEL, Kathryn Amiel, Joanne
Amiel, and Sarina Amiel,
Defendants–Appellants.

No. 1403, Docket 93–1040.

United States Court of Appeals,
Second Circuit.

Argued March 31, 1993.

Decided June 9, 1993.

Adrian L. DiLuzio, Woodmere, NY, for defendants-appellants.

Dave S. Hattem, Asst. U.S. Atty. for the E.D.N.Y. (Mary Jo White, U.S. Atty., Peter A. Norling and Gary R. Brown, Asst. U.S. Attys., of counsel), for appellee.

Before: OAKES, PIERCE, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

## FACTS AND BACKGROUND

In 1986, the United States began investigating Leon Amiel; his wife, Hilda Amiel; his daughters, Kathryn and Joanne Amiel; and his granddaughter, Sarina Amiel, for possible dealings in counterfeit artworks. Through their family businesses, the Amiels allegedly engaged in a scheme to sell to corrupt art dealers limited-edition prints of artists such as Pablo Picasso, Joan Miro, Marc Chagall, and Salvador Dali. Leon Amiel allegedly ran the counterfeit-art operation until his death in 1988, after which his wife, daughters, and granddaughter took over.

On July 8, 1991, the United States District Court for the Eastern District of New York, Thomas C. Platt, *Chief Judge,* issued a warrant *in rem* for the arrest of several properties, some of which were connected with the Amiels. The amended verified complaint *in rem* alleged that the defendant properties were utilized in or constituted the proceeds of mail fraud, money laundering, transportation of stolen goods, and RICO violations. Among the properties seized were commercial real estate in Manhattan; three residential properties in Rockville Centre, New York; $328,785.80 from a safe-deposit box at Bankers Trust Company; $919,983.86 from Bankers Trust Company accounts; a Shearson Lehman brokerage account; three automobiles; National Westminster Bank accounts; and several prints worth thousands of dollars.

Hilda, Kathryn, Joanne, and Sarina Amiel filed claims to most of the above-listed properties on July 17, 1991, but they failed to answer the *in rem* complaint. The district court dismissed their claims on October 11, 1991, and entered a default judgment against the defendant properties on October 30, 1991. The Amiels appealed from that judgment.

On February 28, 1992, a grand jury returned an indictment charging Kathryn, Joanne, and Sarina Amiel with conspiracy and mail fraud in connection with the sale of counterfeit prints. A thirty-count superseding indictment was returned on June 19, 1992, charging Hilda, Kathryn, Joanne, and Sarina Amiel with various counts of mail and wire fraud. It alleged that they sold limited-edition reproductions of well-known contemporary artists' works that were not signed, numbered, or authorized by those artists. All four moved to dismiss the superseding indictment on December 4, 1992, claiming that the criminal proceeding should be barred because the value of the properties seized in the civil action was so overwhelmingly disproportionate to the crimes for which they were charged that the forfeiture constituted punishment for purposes of double jeopardy.

On December 21, 1992, the Amiels withdrew their appeal from the civil forfeiture judgment pending Chief Judge Platt's disposition of the double-jeopardy motion. Their stipulation with the government, which was approved by the court, provided that the withdrawal was to be "without prejudice to a reinstatement of the appeal * * * in writing by 30 days after [the district court] rules on defendants' motion to dismiss indictment in *U.S.A. v. Amiel * * *.* If not thus reinstated, the appeal shall be deemed withdrawn with prejudice."

Chief Judge Platt denied the motion to dismiss, in effect without prejudice, because he granted leave to renew the motion at the "conclusion of the Government's case or of the entire case at trial" on January 6, 1993. 813 F.Supp. 958. All four defendants appealed that order, but Hilda Amiel has since died. A panel of this court stayed the trial pending our disposition of the appeal.

Because we agree with Chief Judge Platt that it would be premature to decide the double-jeopardy issue at this juncture, we affirm.

## DISCUSSION

### A. *Appellate Jurisdiction.*

 Since courts of appeals are generally limited to reviewing "final decisions" of the district courts, 28 U.S.C. § 1291, we usually lack the power to review an interlocutory order denying a pretrial motion to dismiss an indictment. *See, e.g., United States v. Wallach,* 870 F.2d 902 (2d Cir.1989). However, because the double-jeopardy clause protects individuals from second prosecutions, as well as second convictions for the same offense, an immediate appeal lies from a pretrial order denying a motion to dismiss an indictment on double-jeopardy grounds. *Abney v. United States,* 431 U.S. 651, 656–62, 97 S.Ct. 2034, 2038–41, 52 L.Ed.2d 651 (1977). *See also United States v. Ahmed,* 980 F.2d 161, 163 (2d Cir.1992) (double-jeopardy claims fall within "collateral order" exception to final-judgment rule). Therefore, this appeal is properly before us.

### B. *Double Jeopardy.*

 The double-jeopardy clause provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In addition to providing protection against double prosecutions, the clause also prohibits multiple punishments for the same offense. *Grady v. Corbin,* 495 U.S. 508, 510, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990). The Amiels assert that they have already been "punished" by the civil forfeiture, because the value of the properties seized is overwhelmingly disproportionate to the amount involved in their alleged offenses. They contend that the Supreme Court's decision in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and our decision in *United States v. 38 Whalers Cove Drive,* 954 F.2d 29 (2d Cir.1992) [hereinafter *Whalers Cove* ], *cert. denied sub nom. Levin v. United States,* — U.S. —, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992), compel a finding that the civil forfeiture constituted "punishment" for double-jeopardy purposes.

In *Halper,* the Supreme Court held that under certain circumstances a civil penalty may be a punishment for purposes of the double-jeopardy clause. Irwin Halper filed sixty-five false medical-insurance claims, for which he was convicted under the criminal false-claims statute, 18 U.S.C. § 287. The government then brought a civil action against him under the False Claims Act, 31 U.S.C. §§ 3729–3731. Although his false claims resulted in a total overpayment of only $585, the statute authorized the recovery of more than $130,000 in penalties. 490 U.S. at 439, 109 S.Ct. at 1896. The Court held that the double-jeopardy clause protected a defendant who has already been punished in a criminal prosecution from being subjected to an additional civil sanction "to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.,* at 448–49, 109 S.Ct. at 1902. However, the Court limited its holding to "the rare case * * * where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.* at 449, 109 S.Ct. at 1902.

We applied *Halper*'s rationale to a civil forfeiture in *Whalers Cove.* 954 F.2d at 37–38. The *Whalers Cove* defendant twice sold cocaine inside his condominium to an informant for a total of $250. He was convicted in state court of attempted criminal sale of a controlled substance and received a probationary sentence and a small fine. A few weeks later, the government instituted a civil forfeiture proceeding against the condominium in which the defendant had an equity interest of approximately $68,000. *Id.* at 32. This court noted that "[w]here the seized property is not itself an instrumentality of crime * * * *and* its total value is overwhelmingly disproportionate to the value of controlled substances involved in the statutory violation, there is a rebuttable presumption that the forfeiture is punitive in nature." *Id.* at 36 (emphasis in original).

The government would limit *Halper* and *Whalers Cove* to civil forfeitures that follow criminal prosecutions; defendants respond that the chronological order of the two proceedings is irrelevant. In his opinion, Chief Judge Platt noted that in all of the cases cited by the parties "the double jeopardy

issue was not raised until after the criminal conviction was handed down"; he concluded that deciding the motion before trial would "amount[ ] to little more than an advisory opinion to be consulted in the event that defendants do eventually suffer multiple punishments". While some other courts have concluded that *Halper* applies even when the civil action precedes the criminal prosecution, *see, e.g., United States v. Mayers,* 897 F.2d 1126, 1127 (11th Cir.) (per curiam) ("the *Halper* principle that civil penalties can sometimes constitute criminal punishment for double jeopardy purposes would seem to apply whether the civil penalties come before or after the criminal indictment"), *cert. denied,* 498 U.S. 865, 111 S.Ct. 178, 112 L.Ed.2d 142 (1990); *United States v. Marcus Schloss & Co.,* 724 F.Supp. 1123, 1126 (S.D.N.Y.1989) (exacting punitive civil sanction "before imposition of criminal punishment should have the same double jeopardy effect as exaction afterwards"), we need not reach that issue on this appeal, because we agree with Chief Judge Platt's view that it would be premature to decide the defendant's double-jeopardy issue at this juncture.

Given the current posture of the two proceedings in question, it is not clear that the defendants have been punished at all. *See, e.g., United States v. Koonce,* 885 F.2d 720, 722 (10th Cir.1989) (double-jeopardy motion not ripe for review "[u]nless and until defendant receives some punishment * * * that is arguably multiple"), *appeal after remand,* 945 F.2d 1145 (10th Cir.1991). To perform a double-jeopardy analysis, we would have to determine what were the interests of the defendants in the seized property and whether the value of those interests was "overwhelmingly disproportionate" when compared to the value of the "damages" they have caused. *See Halper,* 490 U.S. at 449, 109 S.Ct. at 1902. Defendants urge us to compare the total value of the forfeited properties (over $4 million) to the amount of wrongdoing alleged in the indictment (approximately $226,000). In contrast, the government argues that the proper comparison is between the value of the properties for which the defendants filed claims in the forfeiture action (approximately $110,000) and the amount involved in the defendants' criminal conduct (over $5 million). In addition, the government argues that the bulk of the properties seized constitute instrumentalities of the crime and, as such, should not be factored into any double-jeopardy calculations. *See Whalers Cove,* 954 F.2d at 36 (instrumentalities of crime are not included in proportionality analysis); *United States v. Cullen,* 979 F.2d 992, 995 (4th Cir.1992) (no *Halper* accounting necessary where property is "instrument of criminal activity"); *United States v. McCaslin,* 959 F.2d 786, 788 (9th Cir.) (double-jeopardy analysis inapplicable to forfeitures of instrumentalities), *cert. denied,* —— U.S. ——, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992).

On this record, however, we cannot quantify either the value of the defendants' interests in the seized properties or the amount involved in their criminal conduct, because both proceedings appear to be incomplete. The criminal trial has been stayed pending the outcome of this appeal, and the status of the civil forfeiture judgment is not clear from the record before us. When Chief Judge Platt denied the motion to dismiss, the appeal from the civil forfeiture judgment had been withdrawn without prejudice to reinstatement. We cannot tell whether the appeal was properly reinstated within thirty days of Chief Judge Platt's decision as authorized by the stipulated order. If it has not been reinstated and the time to do so has expired within the contemplation of the stipulated order, then the double-jeopardy motion must fail, because defendants failed to establish legitimate claims to the seized properties, and their judicial challenge to the forfeiture judgment has terminated. If defendants' forfeiture appeal has been reinstated, or if it was the intent of the withdrawal stipulation and order to authorize reinstatement after determination of a renewed double-jeopardy motion made during or after the criminal trial, then it would be premature to decide the double-jeopardy motion until after resolution of that appeal.

■ The government seized various properties pursuant to 18 U.S.C. § 981, which provides for civil forfeiture according to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court

having jurisdiction over the property. 18 U.S.C. § 981(b). The Federal Rules of Civil Procedure also apply to civil forfeitures except to the extent they are inconsistent with the Supplemental Rules. *See* Supp.Rule A. The applicable procedures were detailed in *United States v. United States Currency Totalling $3,817.49*, 826 F.2d 785, 786 (8th Cir. 1987):

> The United States commences a judicial forfeiture by filing a complaint in the district where the seizure occurred. Supp. Rule C(2). Upon the filing of the complaint, the district court clerk issues a warrant for the arrest of the property at issue. *See* Supp.Rule C(3). The United States must then publish notice of the action and arrest in a newspaper of general circulation within the district. The notice must specify the time within which the party filing the claim must file an answer. *See* Supp.Rule C(4). Rule C(6) specifies that a claimant must file an answer within twenty days after the filing of the claim.

*See also United States v. Approximately Two Thousand, Five Hundred Thirty–Eight Point Eighty–Five Shares (2,538.85) of Stock Certificates of Ponce Leones Baseball Club, Inc.*, 988 F.2d 1281 (1st Cir.1993) (detailing Rule C(6) time requirements for filing claim).

■ In this case, the government fully complied with the prescribed procedures, and Hilda, Kathryn, Joanne, and Sarina Amiel filed timely claims to many of the defendant properties on July 17, 1991. They did not, however, file answers to the forfeiture complaint, as required by Supplemental Rule C(6). Consequently, the district court dismissed their claims and on October 30, 1991, entered a default judgment forfeiting the defendant properties to the United States. Strict compliance with Supplemental Rule C(6) is typically required. *See, e.g., United States v. Beechcraft Queen Airplane*, 789 F.2d 627, 630 (8th Cir.1986) (district court did not abuse its discretion in striking answer that was not preceded by verified claim); *United States v. 4629–4631 S. Carrollton Avenue*, 766 F.Supp. 527 (E.D.La.1991) (claim and answer stricken although claimant thought petition for mitigation would prevent default judgment); *United States v. 218 Pan-*

*ther Street*, 745 F.Supp. 118, 120 (E.D.N.Y. 1990) (claimant lacks standing to contest forfeiture because he did not timely file claim and answer); *United States v. $288,914 in U.S. Currency*, 722 F.Supp. 267 (E.D.La. 1989) (default judgment entered because claimant failed to file timely answer). However, a court has discretion in appropriate circumstances to depart from the strict compliance standard. *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1435–36 (9th Cir.1985) (court could exercise discretion to extend deadline for filing claim where claimant filed answer but no verified claim); *4629–4631 S. Carrollton Ave.*, 766 F.Supp. at 529 ("equitable circumstances may justify a departure from the strict compliance standard associated with Rule C(6)"). Thus, we have no way of knowing whether as a result of an appeal defendants would be permitted to open their default and have their claims to the forfeited properties adjudicated on the merits.

■ Even if defendants' claims in the civil forfeiture proceeding are viewed on their merits, it is unclear to what part of the seized properties the defendants may have legitimate claims. Only those with legitimate possessory interests have standing to challenge forfeitures, *United States v. Contents of Accounts Nos. 3034504504 and 144–07143 at Merrill, Lynch, Pierce, Fenner and Smith, Inc.*, 971 F.2d 974, 985 (3d Cir.1992), *cert. denied sub nom. Friko Corp. v. United States*, ─── U.S. ───, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993), and the titles to some of the properties, such as the three automobiles, the safe-deposit box monies, and the commercial property in Manhattan, are in the names of various corporations, while other properties belong to the estate of Leon Amiel. Moreover, we cannot tell what are the interests of the estate of Hilda Amiel, who died after entry of the order now appealed from.

We note that the validity of the default judgment in the civil forfeiture proceeding is not presently before us, and only when that judgment is final can a court develop the full picture of defendants' claims to having already been "punished" by the forfeiture. If an appeal is now barred or if the default judgment is affirmed on appeal, then it would

appear that defendants have no legitimate claim to the seized properties, which would vitiate any claim of "punishment" based on the civil forfeiture. On the other hand, if the default judgment is vacated and defendants are permitted to challenge the forfeiture on the merits, we still would not know until after a remand and further proceedings in the district court whether the remaining defendants have legitimate claims to any of the properties or whether any of those properties were properly forfeited. Without that information it is impossible to determine whether the civil forfeiture of any defendant's interest was disproportionate enough to constitute punishment for purposes of invoking double-jeopardy protections.

On the criminal side, since the prosecution of the case has been stayed pending this appeal, the government has not yet been put to its proof. We therefore do not know if the defendants were involved in any criminal conduct whatsoever, much less the amount of damages their criminal activity might have caused.

## CONCLUSION

Although some criminal prosecutions permit pretrial determination of a double-jeopardy claim, the peculiar circumstances of this claim, requiring as it does a proportionality comparison between the value of the forfeited property with the amount of damage caused by defendants' alleged criminal conduct, preclude a double-jeopardy determination at this stage of defendants' prosecution. Because the merits of the defendants' claims to the seized properties and their guilt or innocence as to the criminal charges have not been adjudicated, there is no basis upon which to determine whether the civil forfeiture claimed to have been inflicted on defendants constitutes a "punishment" for purposes of a double-jeopardy analysis. Therefore, Chief Judge Platt correctly determined that at this point it would be premature to decide this double-jeopardy motion to dismiss the superseding indictment.

Affirmed.