995 F.2d 23
 UNITED STATES of America, Plaintiff-Appellee,
v.
Abel Parama BORROMEO, Defendant-Appellant,
and
Seven (7) Parcels of Real Property; Two (2) Automobiles;
Undetermined Amount of United States Currency Contained in
Several Bank Accounts, Stocks, Bonds, Securities and Other
Negotiable Instruments and Various Items of Personal
Property, Defendants.
 No. 91-7070.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 29, 1992.
Decided May 26, 1993.
 
 Stanley K. Joynes, III, LeClair, Ryan & Joynes, Richmond, VA, argued, for defendant-appellant.
 Betty Adkins Pullin, Asst. U.S. Atty., Charleston, WV, argued (Michael W. Carey, U.S. Atty., Stephen M. Horn, Asst. U.S. Atty., on brief), for plaintiff-appellee.
 Before HAMILTON, Circuit Judge, SPROUSE, Senior Circuit Judge, and KAUFMAN, Senior District Judge for the District of Maryland, sitting by designation.
 OPINION
 FRANK A. KAUFMAN, Senior District Judge:
 Borromeo appeals the civil forfeiture of certain items of real and personal property following his conviction on fifty-two counts of unlawfully prescribing controlled substances and on one RICO count. Borromeo contends that the District Court erred in granting summary judgment for the government because the government failed to meet the burden of demonstrating a "substantial connection" between the property sought to be forfeited and Borromeo's criminal activity, pursuant to United States v. Santoro, 866 F.2d 1538 (4th Cir.1989). Borromeo additionally asserts that the Double Jeopardy clause bars the application herein of the civil forfeiture laws since he has already been punished in an earlier criminal proceeding and the effect of the forfeiture in question is punitive rather than remedial. For the reasons articulated below, we affirm in part and reverse in part.
 * Borromeo was indicted in the Southern District of West Virginia on November 15, 1989, for violations of 18 U.S.C. § 2 (aiding and abetting), 21 U.S.C. § 841 (unauthorized dispensing of controlled substances), 18 U.S.C. §§ 1512 (hindering report to law enforcement official), and 1962 ("RICO"). On November 20, 1989, the United States filed in the court below a verified complaint of forfeiture and provided notice to those believed to have an interest in the subject property, including Borromeo. Borromeo filed a verified claim and an answer to the forfeiture complaint on January 10, 1990. On August 3, 1990, the district court stayed the forfeiture action, pending resolution of the criminal charges. In September of 1990, Borromeo was convicted upon one RICO count and fifty-two counts of unlawfully prescribing controlled substances. He was sentenced to a term of 78 months imprisonment, five years of supervised release, and, in lieu of a fine, ordered to pay $150,000 in reparations to the District Court's Criminal Justice Act budgeted counsel funds. On October 12, 1990, the District Court granted the United States' motion to lift the stay and the forfeiture action proceeded.
 
 
 1
 The government, in its complaint in the forfeiture action, targeted two categories of property: (1) one parcel of real estate and certain personal property used to facilitate illegal drug dispensing activities; and (2) property, claimed by the government, to constitute proceeds traceable to Borromeo's illegal conduct, including six other parcels of real estate, two vehicles, and certain bank and investment accounts, securities, and insurance policies. According to the complaint, except for the one parcel of real estate enumerated in the first category above (which was said to be forfeitable under 21 U.S.C. § 881(a)(7)), all of the property was subject to forfeiture under 21 U.S.C. § 881(a)(6).*
 
 
 2
 In March of 1991, the government moved for summary judgment. Borromeo chose not to present any evidence of his own in opposition to the government's motion, relying instead upon his contentions that (1) the government had, as a matter of law, failed to meet its burden of showing probable cause and (2) his Double Jeopardy Clause argument.
 
 
 3
 In a memorandum opinion dated April 10, 1991, the District Court granted summary judgment for the government. In that opinion, the court below noted that "[t]he Government bears the initial burden in a forfeiture action of showing there was probable cause to initiate forfeiture proceedings." Also, recognizing that "[t]o meet its burden, the Government must furnish reasonable grounds to believe a substantial connection exists between the Defendant property and Borromeo's unauthorized dispensing of controlled substances," the district court concluded:
 
 
 4
 The United States has met its burden of establishing probable cause. Borromeo's criminal conviction ... conclusively establishes probable cause for forfeiture of the assets. The criminal conviction establishes that from 1983 until 1989 Borromeo engaged in a pattern of racketeering in which he used his three medical practices to unlawfully dispense controlled substances. Since Borromeo is collaterally estopped to deny his racketeering and unlawful dispensing activity, the Government has met its burden of demonstrating reasonable grounds to believe a substantial connection between Borromeo's illegal conduct in [sic] the subject property.
 
 
 5
 The district court's opinion, however, did not address Borromeo's Double Jeopardy argument.
 
 II
 
 6
 Borromeo concedes that the district court had before it, upon the government's motion for summary judgment, evidence sufficient to support its determination that the building housing the medical practice in which Borromeo's criminal activity took place was forfeitable as an instrumentality of the crime under 21 U.S.C. § 881(a)(7). Borromeo contends, however, that, with regard to the other properties sought to be forfeited under 21 U.S.C. § 881(a)(6), the district court erred in determining that the government had met its burden of "furnish[ing] reasonable grounds to believe a substantial connection exists between the Defendant property and Borromeo's unauthorized dispensing of controlled substances." We agree.
 
 
 7
 The evidence presented to the District Court showed that Borromeo had engaged in illegal activity. In fact, as the district court correctly observed, Borromeo was estopped from denying such activity by his criminal conviction on fifty-three counts. Further, there was ample evidence to support the finding that Borromeo possessed substantial assets. However, the government failed to adduce sufficient evidence showing a "substantial connection between the property [sought to be forfeited] and the criminal activity," as is required by our decisions in United States v. Santoro, 866 F.2d 1538, 1542 (4th Cir.1989), and United States v. $95,945.18 in U.S. Currency, 913 F.2d 1106, 1110 (4th Cir.1990). Santoro was concerned with a forfeiture under 21 U.S.C. § 881(a)(7). United States v. $95,945.18 in U.S. Currency, was, as we are in the within case, concerned with a forfeiture under 21 U.S.C. § 881(a)(6).
 
 
 8
 In this connection, the government, in defending this appeal, is unable to point to any evidence adduced by it in its case in chief that would tend to establish a substantial connection, but rather relies solely upon the theory that one of its answers to Borromeo's interrogatories, which were appended as an exhibit to Borromeo's memorandum in opposition to the government's motion for summary judgment, provides a sufficient basis for upholding the district court's grant of summary judgment. The government concedes that the court below did not base its decision on the grounds now suggested by the government, but argues that this Court "is not tied to the district court's reasoning, but may affirm summary judgment on any independently sufficient ground made manifest by the record." United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir.1992).
 
 
 9
 In the within case, we decline the government's invitation to adopt its post hoc rationalization of the district court's decision for the simple reason that the government's theory is too thinly supported in the record to justify a grant of summary judgment. The government, in its response to Borromeo's interrogatory seeking the facts underlying the government's claim to those items of Borromeo's property alleged to be forfeitable as proceeds, included the following sentence: "Additionally, the sole source of income of Abel P. Borromeo, Abel P. Borromeo, M.D., Inc., and the Jefferson Family Health Center was generated by the practice of medicine by Abel P. Borromeo." Borromeo's criminal conviction established that from 1983 until 1989 his medical practice was an instrumentality of his illegal narcotics activity. Accordingly, the government argues that it has borne its burden of showing probable cause that all of Borromeo's property was purchased with tainted drug money. We disagree. In the first place, the government seeks to forfeit all of Borromeo's assets, including those he purchased with income derived between 1979, when he launched his medical practice, and 1983, the year the criminal activity for which he was convicted began. The government presented no evidence to explain how the assets acquired between 1979 and 1983 were substantially connected to his later crimes. Moreover, the government failed to offer sufficient evidence to support its underlying premise, i.e. that Borromeo's sole source of income from 1983 to 1989 was his medical practice. A mere conclusory allegation, of the sort upon which the government relies, without any indication of the source or the basis for the information, is too little to support the government's position. Indeed, the government, in its memorandum in support of its motion for summary judgment stated a view not totally consistent with the statement upon which it now asks us to rely, when it said that Borromeo's financial records "show that there is some investment income." Accordingly, in the light of the within record, we decline to use the government's proposed rationale to shore up the district court's ruling.
 
 
 10
 In the absence of a showing of a substantial connection, the district court should not have granted summary judgment in favor of the government. To fail to require the government to demonstrate a substantial connection between the criminal activity and the arrested assets could result in all assets belonging to one who stands convicted of violating our nation's drug laws being, ipso facto, subject to forfeiture regardless of their origin. Such is not the law. The hurdle posed by the "substantial connection" requirement is not, as our opinions in United States v. Thomas, 913 F.2d 1111, 1114 (4th Cir.1990), and United States v. $95,495.18 in U.S. Currency, 913 F.2d 1106, 1110-11 (4th Cir.1990), indicate, a particularly high one. Nonetheless, it is a hurdle that the government must surmount before a claimant such as Borromeo can be required to shoulder the burden of establishing, by a preponderance of the evidence, that his property was not acquired in violation of the law or otherwise linked to illegal drug activity. In the within case, the record indicates that the government has produced little if any evidence of "substantial connection."
 
 
 11
 Accordingly, with regard to those items sought to be forfeited under 21 U.S.C. § 881(a)(6) as proceeds of illegal activity, the District Court's grant of summary judgment requires remand.
 
 III
 
 12
 As we have previously noted, the Supreme Court in United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989),
 
 
 13
 held that the Double Jeopardy Clause barred a $130,000 civil penalty under the false claims act, 31 U.S.C. §§ 3729-3731, that followed a criminal conviction when the government had suffered only $585 in actual damages. The penalty was deemed punitive rather than remedial because the relief sought was so "overwhelmingly disproportionate to the damages" caused by the defendant. The Supreme Court remanded for a determination of the government's damages and costs.
 
 
 14
 United States v. Cullen, 979 F.2d 992, 994-95 (4th Cir.1992) (citations omitted). Herein, Borromeo argues that Halper required the court below to inquire into the amount of damage attributable to Borromeo's conduct and the proportionality of the assets sought to be forfeited to those damages. Therefore, Borromeo asks us to require the District Court, on remand, to determine whether the forfeiture here at issue is so grossly disproportionate to the damages directly attributable to Borromeo's illegal conduct as to compel a finding that the relief sought by the government is punitive rather than remedial in nature, and therefore violative of the Double Jeopardy Clause. We decline to do so. In Cullen, in the course of refusing to read Halper to require a remand to inquire into similar proportionality issues, we concluded that "the Double Jeopardy Clause does not apply to civil forfeitures where the property itself has been an instrument of criminal activity." Id. at 995. That conclusion rested upon a carefully drawn distinction between purposes underlying the type of penalty provision at issue in Halper and those underlying the type of forfeiture provisions at issue in Cullen. As we noted in Cullen:
 
 
 15
 Halper involved a civil penalty intended to substitute for damages suffered by the government for the fraudulent acts committed upon it. The remedial purpose of that penalty was one of compensation, and the amount sought by the government overwhelmed any realistic estimate of the government's pecuniary loss. Here, by contrast, the government seeks the forfeiture of the Cullens' building not to compensate itself for any costs of investigation or prosecution, but to remove what had become a harmful instrumentality in the hands of the Cullens.
 
 
 16
 Id.
 
 
 17
 Borromeo quite correctly points out that the items of defendant property at issue in the within appeal are not sought to be forfeited as instrumentalities of Borromeo's illegal actions, but rather as proceeds of those actions. Borromeo contends that that distinction mandates a different result than that reached by us in Cullen. We do not agree. As was the case in Cullen, the purpose of the forfeiture provision here at issue is not limited to compensating the government for its pecuniary losses resulting from the claimant's illegal conduct. Rather, one of the purposes of Congress in mandating the forfeiture of the proceeds of illegal activity was to reduce the incentive for engaging in such activity. As we observed in Cullen,
 
 
 18
 [g]ranting constitutional immunity to those who employ extremely valuable assets when committing crimes would create a disparity between rich and poor defendants. As a principle of civil forfeiture, this makes little sense. So far as the public welfare is concerned, the Ferrari is at least as harmful an instrumentality as the Chevette.
 
 
 19
 Id. Similarly, a rule permitting those criminals who had most successfully parlayed their drug related incomes into substantial assets to retain those assets would frustrate a remedial purpose of the provision permitting forfeiture of the proceeds of illegal activity. Congress, when it enacted 21 U.S.C. § 881(a)(6), certainly never intended to permit those who have violated our nation's drug laws to keep either the Ferrari or the Chevette which they purchased with tainted drug money.
 
 
 20
 Accordingly, we affirm the district court's refusal to accede to Borromeo's request for a Halper type individualized accounting. Our remand herein is thus limited to the "substantial connection" issue.
 
 IV
 
 21
 For the above reasons, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings in accordance with this opinion.
 
 
 22
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 Section 881(a)(7) is the provision of the forfeiture statute which focuses on real property and on improvements used directly in the commission of criminal activity or to facilitate the same. Section 881(a)(6) relates to forfeiture of things of value which constitute the traceable proceeds of illegal activity