STATE of Minnesota, Appellant,

v.

Harlan Jay ROSENFELD, Respondent.

No. C3–95–1339.

Court of Appeals of Minnesota.

Dec. 26, 1995.

Michael O. Freeman, Hennepin County Attorney, Gayle C. Hendley, Assistant County Attorney, Minneapolis, for Appellant.

Douglas W. Thomson, Lisa D. Lodin, St. Paul, for Respondent.

Hubert H. Humphrey, III, Attorney General, James B. Early, Assistant Attorney General, St. Paul, and Gina G. Washburn, Executive Director, Minnesota County Attorneys Association, St. Paul, for Amici Curiae Attorney General and Minnesota County Attorneys Association.

Considered and decided by PARKER, P.J., TOUSSAINT, C.J., and LANSING, KLAPHAKE, AMUNDSON, HARTEN and FOLEY,* JJ.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

KLAPHAKE, Judge.

Appellant State of Minnesota brought criminal drug charges against respondent Harlan Jay Rosenfeld. The district court dismissed the charges, ruling that a prior forfeiture of certain property under the civil drug forfeiture statute, Minn.Stat. § 609.5311 (1992), constituted punishment of Rosenfeld and that the criminal prosecution therefore violated the constitutional prohibition against double jeopardy. The state appeals the dismissal, and we reverse and remand for an evidentiary hearing.

## FACTS

The following statement of facts is derived from the district court order dismissing Rosenfeld's criminal charges.

On November 19, 1993, a police officer stopped Rosenfeld for traffic violations and arrested him after observing crack cocaine in his car. Later that day, Rosenfeld was served with a Notice of Seizure and Intent to Forfeit Property, including a 1989 Mercedes 300 CE, two rings, a Rolex watch, a gold bracelet, and $800 cash in $100 bills. Four days later, police executed a search warrant at Rosenfeld's residence and found cocaine powder and drug paraphernalia. Police arrested Rosenfeld again and later served him with a forfeiture notice for $16,500 cash in $100 bills and 106 gold coins discovered in his residence during the search. Rosenfeld claimed that the total value of the forfeited property was $101,430, while the state set the fair market value at $95,755.[1]

On November 24, 1993, the state filed two criminal complaints against Rosenfeld. He was charged with fifth-degree possession of a controlled substance in violation of Minn. Stat. § 152.025, subd. 2(1) (1992), for the 1.01 grams of crack cocaine found in the car. In the second complaint, Rosenfeld was charged with first-degree sale of a controlled substance in violation of Minn.Stat. § 152.021, subd. 1(1) (1992), and second-degree posses-

---

1. The difference in the total value of the forfeited property is apparently due to Rosenfeld valuing the gold coins at $41,630 and the state valuing them at $35,955.

sion in violation of Minn.Stat. § 152.022, subd. 2(1) (1992), for the 15.8 grams of cocaine powder found at his residence.

On January 11, 1994, Rosenfeld filed timely Petitions for Judicial Determination of Forfeiture and Return of Property concerning the forfeitures. Rosenfeld rejected a compromise offer, and the court granted summary judgment to the state in both forfeiture actions on September 15, 1994. Rosenfeld's attorney appeared at the summary judgment hearing by telephone, but he did not contest the summary judgments.

On January 10, 1995, the day Rosenfeld's criminal trial was scheduled to begin, Rosenfeld notified the state that he intended to rely on the defense of double jeopardy. On May 3, 1995, the district court dismissed the criminal charges against Rosenfeld on double jeopardy grounds, and the state filed this appeal.

## ISSUES

I. Did the prior civil forfeitures bar Rosenfeld's criminal prosecution because of double jeopardy?

II. Was Rosenfeld's assertion of the double jeopardy defense untimely?

## ANALYSIS

### I. Double Jeopardy

■ Rosenfeld claims his criminal prosecution violated state and federal constitutional prohibitions against double jeopardy. The Fifth Amendment to the United States Constitution provides: "No person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb * * *." U.S. Const. amend. V. *See* Minn. Const. art. I, § 7 ("[N]o person shall be put twice in jeopardy of punishment for the same offense * * *."); Minn.Stat. § 609.035, subd. 1 (1994) ("[I]f a person's conduct constitutes

more than one offense under the laws of this state, the person may be punished for only one of the offenses * * *.").[2] The Double Jeopardy Clause prohibits multiple punishment and successive prosecution. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). To determine whether the criminal prosecution raised the specter of multiple punishment in this case, we must decide whether the forfeiture of property claimed by Rosenfeld under the state's civil drug forfeiture statutes constituted punishment for purposes of double jeopardy.

Rosenfeld's property was forfeited under the following provisions:

Subdivision 1. **Controlled substances.** All controlled substances that were manufactured, distributed, dispensed, or acquired in violation of chapter 152 are subject to forfeiture under this section * * *.

Subd. 2. **Associated property.** All property, real and personal, that has been used, or is intended for use, or has in any way facilitated, in whole or in part, the manufacturing, compounding, processing, delivering, importing, cultivating, exporting, transporting, or exchanging of contraband or a controlled substance that has not been lawfully manufactured, distributed, dispensed, and acquired is subject to forfeiture under this section * * *.

\* \* \* \* \* \*

Subd. 4. **Records; proceeds.** (a) All books, records, and research products and materials, including formulas, microfilm, tapes, and data that are used, or intended for use in the manner described in subdivision 2 are subject to forfeiture.

(b) All property, real and personal, that represents proceeds derived from or traceable to a use described in subdivision 2 is subject to forfeiture.

---

**2.** Rosenfeld does not assert that state law affords greater protection against double jeopardy than federal law. *See State v. Fuller*, 374 N.W.2d 722, 726–27 (Minn.1985) (declining to give state constitutional double jeopardy provision broader

scope than its federal counterpart); *State v. Thompson*, 241 Minn. 59, 66, 62 N.W.2d 512, 518 (1954) (predecessor statute to Minn.Stat. § 609.035 implemented, rather than expanded,

Minn.Stat. § 609.5311 (1992).[3]

### A. *Consent to Summary Judgment*

The state first argues that jeopardy should not attach in this case because Rosenfeld consented to the entry of summary judgments in the civil forfeiture proceedings. The state contends that under these circumstances, criminal prosecution of Rosenfeld cannot constitute double jeopardy. *See Serfass v. United States,* 420 U.S. 377, 387–89, 95 S.Ct. 1055, 1062–63, 43 L.Ed.2d 265 (1975) (discussing requirement that former jeopardy must attach to implicate double jeopardy). For this argument, the state relies on *United States v. Torres,* 28 F.3d 1463 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). In *Torres,* the Seventh Circuit held that a defendant was not placed "in jeopardy" in the forfeiture proceeding because he failed to make a claim or become a party to the proceeding. *Id.* at 1465. The court speculated that the defendant's failure to make a claim in the forfeiture action could indicate he had no ownership interest in the property subject to forfeiture. *Id.* at 1465–66. Thus, double jeopardy did not bar prosecution of the defendant's drug charge. *Id.* at 1466; *see also United States v. Baird,* 63 F.3d 1213, 1217–19 (3d Cir.1995) (jeopardy does not attach to administrative forfeiture because without ownership claim, no person was punished by forfeiture), *pet. for cert. filed,* 64 U.S.L.W. 3318 (Oct. 17, 1995); *United States v. Arreola–Ramos,* 60 F.3d 188, 192–93 (5th Cir.1995) (jeopardy does not attach to summary forfeiture because no one is punished).

■ This case is distinguishable from *Torres.* Here, Rosenfeld was a party to the forfeiture actions. He explicitly asserted an interest in the forfeited property by filing two petitions requesting return of the property. His later consent to entry of summary judgment in the forfeiture actions does not alter either his status as a party or his claimed interest in the property. *See United States v. Ursery,* 59 F.3d 568, 571–72 (6th Cir.1995) (jeopardy attached to consent judgment in forfeiture action where defendant made claim in forfeiture proceeding), *cert. granted* —— U.S. ——, 116 S.Ct. 762, —— L.Ed.2d —— (1996); *cf. State v. Watley,* 541 N.W.2d 345 (Minn.App.1995) (jeopardy did not attach where criminal defendant did not petition for judicial determination of drug forfeiture and so did not become party to prior forfeiture proceeding).

The state also argues that Rosenfeld manipulated the district court proceedings in order to raise a double jeopardy defense in the criminal proceeding. Rosenfeld's defense, however, cannot be prejudiced by the legislative scheme that allows separate resolution of civil forfeiture and criminal guilt issues. The state initiated the civil forfeitures by seizing the property, and Rosenfeld was entitled to consent to entry of summary judgment in those actions. Rosenfeld's criminal defense strategy is logical given the *Torres* requirement that he be a party to the forfeiture actions. We conclude that Rosenfeld's consent to entry of the summary judgments did not preclude attachment of jeopardy to the forfeiture proceedings.

### B. *Civil Forfeiture as Punishment*

■ In determining whether double jeopardy applies, we must next analyze whether the forfeitures constituted punishment. This issue is governed by the standards enunciated in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In

---

scope of state constitutional double jeopardy provision).

3. The following presumption applies in all administrative forfeiture actions:

 (a) The following are presumed to be subject to administrative forfeiture under this section: (1) all money, precious metals, and precious stones found in proximity to:

 (i) controlled substances;

 (ii) forfeitable drug manufacturing or distributing equipment or devices; or

 (iii) forfeitable records of manufacture or distribution of controlled substances;

 (2) all conveyance devices containing controlled substances with a retail value of $100 or more if possession or sale of the controlled substance would be a felony under chapter 152 * * *.

Minn.Stat. § 609.5314, subd. 1 (Supp.1993); *see* Minn.Stat. § 609.531, subd. 6a (Supp.1993) (in judicial forfeiture action, state has benefit of evidentiary presumption of Minn.Stat. § 609.5314).

*Halper,* the defendant was convicted of 65 counts of submitting false medical claims for government reimbursement and fined $130,000, including double damages, under the federal civil False Claims Act. *Id.* at 437–38, 109 S.Ct. at 1896. The Court concluded that this sanction constituted punishment because it was "overwhelmingly disproportionate" to the compensatory damages and bore "no rational relation" to the goal of compensating the government for its loss. *Id.* at 449–50, 109 S.Ct. at 1902. The Court established the following test for determining whether civil sanctions constitute permissible compensation or impermissible punishment:

> [A] defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Id.* at 448–49, 109 S.Ct. at 1902.[4]

Rosenfeld argues that the present inquiry should be governed by *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In *Austin,* the United States Supreme Court held that the Excessive Fines Clause of the Eighth Amendment applied to drug forfeitures under a federal civil statute because the forfeitures constituted "punishment." *Id.* at ——, 113 S.Ct. at 2812. Rosenfeld contends that the present forfeitures therefore must also be considered punishment for purposes of double jeopardy.

We conclude that *Austin* is not controlling here. In *Austin,* application of the Excessive Fines Clause turned on whether the forfeiture constituted punishment, and the Court apparently relied on *Halper* to define that term. *Austin,* —— U.S. at ——, 113 S.Ct. at 2806. It did not use the "fairly characterized as remedial" test, however, which the *Halper* Court had specifically articulated as its holding. Instead, the *Austin* Court stated that a sanction constituted punishment unless "solely" remedial. *Austin,*

—— U.S. at ——, 113 S.Ct. at 2806 (citing *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902). Consequently, the Court analyzed whether the drug forfeiture was punitive *in part* and concluded that "forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment." *Id.* at ——, 113 S.Ct. at 2810 (footnote omitted). The Court recognized this limitation:

> [T]he question is whether forfeiture serves *in part* to punish, and one need not exclude the possibility that forfeiture serves other purposes to reach that conclusion.

*Id.* at —— n. 12, 113 S.Ct. at 2810 n. 12.

We decline to apply the "solely remedial" standard because the Supreme Court recently reaffirmed the "fairly characterized" test as the holding of *Halper.* *See Department of Revenue v. Kurth Ranch,* —— U.S. ——, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994) (citing *Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1901–02). This distinction is significant because under the "fairly characterized" test, the forfeiture may be punitive in part and still not constitute punishment for double jeopardy purposes. Consequently, we conclude that *Halper* is controlling in this case.

■ Rosenfeld alternatively argues that the forfeitures here fail the "fairly characterized" test because the state has not shown that it suffered damages resembling the value of the forfeited property. In support of this argument, Rosenfeld again cites *Austin,* in which the Supreme Court stated that the value of forfeitable conveyances

> can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental.

*Austin,* —— U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14.

■ Again, we disagree. Rosenfeld is mistaken in considering only the monetary

---

4. We recently applied the *Halper* test in *State v. Hanson,* 532 N.W.2d 598 (Minn.App.1995), *review granted* (Minn. Aug. 9, 1995). In *Hanson,* we held that a 90–day driver's license revocation under the implied consent statute did not constitute punishment for purposes of double jeopardy. *Id.* at 602. Applying language from *Halper,* we concluded that the revocation was not punishment because it was not "overwhelmingly disproportionate to the public safety interest at stake," was "fairly characterized as remedial," and was "'rationally related' to its legislative purpose of protecting public safety." *Id.* (citations omitted).

value of the forfeited property. In *Halper*, the sanction at issue was a civil penalty designed to compensate the government, and therefore the Court considered only that single remedial goal. In determining whether a sanction "may fairly be characterized as remedial," however, a court must consider *all* remedial goals served by the sanction. *Halper*, 490 U.S. at 448–49, 109 S.Ct. at 1901–02. Although drug forfeitures may serve the remedial goal of compensating the state for its law enforcement activities, they also serve other valid remedial goals that must be recognized in properly applying the *Halper* test.

## C. Forfeiture of Instrumentalities

■ One such remedial goal of forfeiture under Minnesota's drug forfeiture statute is protecting the public by preventing continued drug trafficking. This remedial goal is accomplished by the forfeiture of instrumentalities of drug crimes. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 364, 104 S.Ct. 1099, 1106, 79 L.Ed.2d 361 (1984) (Court approved similar remedial purpose of removing dangerous firearms from the flow of commerce by forfeiture of firearms intended for illegal sale).

Three federal appellate courts have also recognized this remedial goal and concluded that the forfeiture of instrumentalities does not constitute punishment for purposes of double jeopardy under the *Halper* test. In *United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive*, 954 F.2d 29 (2d Cir.1992), *cert. denied*, 506 U.S. 815, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992), the Second Circuit specifically noted the remedial purpose of federal criminal drug forfeitures and stated that such forfeitures were not punitive where the property to be forfeited was used "substantially to accomplish illegal purposes," making the property " 'culpable' or an instrumentality of the crime." *Id.*

at 36 (citation omitted). The Second Circuit, in recognizing remedial goals other than compensating the government, exempted instrumentalities from a *Halper*-like weighing against actual damages suffered by the government.[5]

In *United States v. McCaslin*, 959 F.2d 786 (9th Cir.1992), *cert. denied*, 506 U.S. 942, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992), the Ninth Circuit held double jeopardy does not apply to instrumentalities of a drug crime because forfeiture proceedings are *in rem* and completely unrelated to *in personam* criminal proceedings:

> In such forfeitures there is no necessary relation between the value of the property forfeited and the loss to the government, nor is there any necessary proportion between the value of the property forfeited and the criminal use of the property. * * * The proceeding is directed against the property and not at an individual.

*Id.* at 788.[6]

The Fourth Circuit also distinguished instrumentalities under *Halper* in *United States v. Cullen*, 979 F.2d 992 (4th Cir.1992). In *Cullen*, the Fourth Circuit stated that *Halper* did not require an accounting of the government's actual damages in forfeiture proceedings because the remedial purpose of the forfeiture was not to compensate the government, as it was in *Halper*, but to remove "a harmful instrumentality." *Id.* at 995. The court also reasoned that

> to limit the forfeitability of assets to the costs incurred by the government in connection with a criminal case would undercut Congress' purposes in enacting the forfeiture provisions. It would tend to exempt from forfeiture the most substantial investments in the instrumentalities of the drug trade. Granting constitutional immunity to those who employ extremely valu-

5. *Whalers Cove* was decided before *Austin*. In a recent case, however, the Second Circuit implicitly reaffirmed *Whalers Cove* even in light of *Austin*. *See United States v. All Assets of G.P.S. Automotive Corp.*, 66 F.3d 483, 491 (2d Cir. 1995).

6. In a subsequent case, the Ninth Circuit held that because the *Austin* Court took its definition of "punishment" from *Halper*, the Court indicat-

ed that federal drug forfeitures constituted punishment under *both* the Double Jeopardy and Excessive Fines Clauses. Consequently, the Ninth Circuit stated that *McCaslin*'s reasoning was wrong. *United States v. $405,089.23 United States Currency*, 33 F.3d 1210 (9th Cir.1994). As stated above, we believe that *Austin* does not control this case, and *McCaslin* therefore remains authoritative.

able assets when committing crimes would create a disparity between rich and poor defendants. As a principle of civil forfeiture, this makes little sense. So far as the public welfare is concerned, the Ferrari is at least as harmful an instrumentality as the Chevette.

*Id.* at 995. The court cited *McCaslin* and *Whalers Cove* and joined those courts in concluding that "the Double Jeopardy Clause does not apply to civil forfeitures where the property itself has been an instrument of criminal activity." *Id.* (citations omitted).

Justice Scalia's concurrence in *Austin* also supports this distinction between reimbursing the government and removing instrumentalities of crime. In *Austin,* the Court remanded the case to the district court to determine whether the forfeiture there was actually "excessive" under the Excessive Fines Clause. *Austin,* —— U.S. at ——, 113 S.Ct. at 2812. Justice Scalia wrote separately, in part to emphasize that the excessiveness analysis for a drug forfeiture must be different from that applied to monetary fines. *Id.* at ——, 113 S.Ct. at 2813 (Scalia, J., concurring). He distinguished forfeitures in this way:

> Unlike monetary fines, statutory *in rem* forfeitures have traditionally been fixed, not by determining the appropriate value of the penalty in relation to the committed offense, but by determining what property has been "tainted" by unlawful use, to which issue the value of the property is irrelevant. Scales used to measure out unlawful drug sales, for example, are confiscated whether made of the purest gold or the basest metal. * * * The question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense.

*Id.* at ——, 113 S.Ct. at 2815. Similarly, because of the remedial purposes of the forfeitures here, a *Halper* analysis that focuses not on the value of the property forfeited but instead on its relationship to drug offenses is appropriate.

■ We agree that forfeitures of instrumentalities of drug crimes serve the remedial purpose of preventing continued drug trafficking by removing such objects from society. We conclude that the forfeiture of instrumentalities of drug crimes is rationally related to valid remedial goals and that forfeiture of property that "has been used substantially to accomplish illegal purposes" does not constitute punishment for purposes of double jeopardy. *Whalers Cove,* 954 F.2d at 36.

### D. *Forfeiture of Proceeds*

■ Similarly, the forfeiture of proceeds of drug sales serves the remedial purpose of reducing the financial incentive to engage in drug dealing:

> [A] rule permitting those criminals who had most successfully parlayed their drug related incomes into substantial assets to retain those assets would frustrate a remedial purpose of the provision permitting forfeiture of the proceeds of illegal activity. Congress, when it enacted [the federal drug forfeiture statute], certainly never intended to permit those who have violated our nation's drug laws to keep either the Ferrari or the Chevette which they purchased with tainted drug money.

*United States v. Borromeo,* 995 F.2d 23, 27 (4th Cir.1993). We also agree with this analysis and conclude that the forfeiture of proceeds is rationally related to valid remedial goals and therefore does not constitute punishment for purposes of double jeopardy.

■ Moreover, a person is not punished when forced to give up property unlawfully gained. The possessor of proceeds from illegal drug sales "has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds" where they were gained from illegal activity. *United States v. Tilley,* 18 F.3d 295, 300 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994). Forfeiture of illegal proceeds does not punish the person "because it exacts no price in liberty or lawfully derived property." *Id.*

■ Finally, if the forfeited property represents proceeds of past drug sales that are not the subject of the instant criminal prosecution, any punishment would be for offenses separate from those serving as the basis for

the present criminal prosecution. *See Halper*, 490 U.S. at 440, 109 S.Ct. at 1897 (Double Jeopardy Clause protects against multiple punishments *for the same offense* ). Rosenfeld's criminal charges were based on cocaine he possessed on November 19 and 23, 1993. If the forfeited money constituted proceeds from prior drug sales, any punishment would be for controlled substances possessed *prior to* those dates. The forfeitures would then be based on drug offenses separate from the offenses giving rise to the criminal charges, and double jeopardy would not be implicated. *See United States v. Rhodes*, 62 F.3d 1449, 1452 (D.C.Cir.1995) (forfeiture proceeding and subsequent criminal trial punished defendant for factually distinct offenses where forfeiture proceeding was predicated on theory that forfeited property constituted proceeds from prior drug sales).

### E. *Summary and Application*

In summary, we hold that forfeitures of instrumentalities ·of drug crimes and proceeds of illegal drug sales do not constitute punishment for purposes of double jeopardy and therefore do not bar a subsequent criminal drug prosecution.

 In the present case, the record does not establish whether the forfeited property represents instrumentalities of drug crimes or proceeds. Under the forfeiture statute, only proceeds, "associated property," records, and drugs are subject to forfeiture. Minn.Stat. § 609.5311. The property here clearly is not drugs or records and thus must have been forfeited as proceeds or "associated property." Forfeitable "associated property" consists of

> [a]ll property, real and personal, that has been used, or is intended for use, or has in any way facilitated, in whole or in part, the manufacturing, compounding, processing, delivering, importing, cultivating, exporting, transporting, or exchanging of contraband or a controlled substance that has not been lawfully manufactured, distributed, dispensed, and acquired.

*Id.*, subd. 2. We are not persuaded, however, that all "associated property" is necessarily · an instrumentality of a drug crime. The property here may have been forfeitable under this subdivision, yet may not represent property that "has been used substantially to accomplish illegal purposes." *Whalers Cove*, 954 F.2d at 36.

· We therefore remand this case to the district court for an evidentiary hearing. If the district court determines the property constitutes instrumentalities of drug crimes or proceeds of drug sales, Rosenfeld's prosecution on drug charges is not barred and the criminal· proceedings should continue. If, on the other hand, the district court determines that the property represents neither proceeds nor instrumentalities, but rather other forfeitable "associated property," then the forfeitures constitute punishment under *Halper*. As explained above, forfeiture of instrumentalities and proceeds serves the valid remedial purposes of preventing continued drug dealing and reducing the financial incentive to engage in such conduct. Forfeiture of property that does *not* represent proceeds or instrumentalities does not serve these. goals. Rather, such forfeitures are intended merely for deterrence and retribution—the goals of punishment, according to *Halper*. 490 U.S. at 448, 109 S.Ct. at 1902. As such, forfeitures of other "associated property" "may not fairly be characterized as remedial." *Id.* at 449, ·109 S.Ct. at 1902. Consequently, if the district court determines that the forfeited property does not represent proceeds or instrumentalities, double jeopardy bars the instant prosecution and the charges must be dismissed.

## II. Timeliness of Double Jeopardy Defense

The Attorney General and. the Minnesota County Attorneys Association, as amici curiae, argue ·that Rosenfeld did not submit a timely notice of his intent to rely on the defense of double jeopardy. Minn. R.Crim. P. 9.02, subd. 1 provides that a defendant must inform the state in writing of such a defense before the date set for the omnibus hearing. Here, the state did not receive notice of Rosenfeld's double jeopardy defense until the day· of trial.·

 ·We need not consider this· issue because the state failed to raise it in its appellate brief.

The purpose of an amicus brief is to give a nonadversarial explanation of the reasons a particular rule should be adopted in a particular case. * * * An amicus brief should not argue that a particular party should prevail.

SCSC Corp. v. Allied Mut. Ins. Co., 515 N.W.2d 588, 598 n. 1 (Minn.App.1994) (citation omitted), aff'd in part, rev'd in part, 533 N.W.2d 603 (Minn.1995). While amici here may address application of double jeopardy to criminal prosecutions after civil drug forfeitures, they are prohibited from addressing whether Rosenfeld's defense should have been barred for untimeliness in this particular case. Amici were not parties to this action and were not aggrieved by the district court's decision to allow Rosenfeld's double jeopardy defense.

 The facts also support resolution of this issue in favor of Rosenfeld. The omnibus hearing was bifurcated, with the suppression issues heard on the day of trial, apparently consistent with local practice in Hennepin County. It is unclear under these circumstances whether a defendant must give notice of a double jeopardy defense before the first part of the omnibus hearing is held. Further, the district court found that the state was not prejudiced by the timing of the actual notice. The trial was continued after Rosenfeld raised the defense, allowing both parties ample opportunity to brief the double jeopardy issue. This lack of prejudice is particularly relevant because the obvious intent of rule 9.02 is to allow the state time to challenge possible defenses. For these reasons, we decline to consider the issue of the timeliness of Rosenfeld's assertion of the double jeopardy defense raised by amici.

## DECISION

To the extent that the forfeitures here represented forfeiture of proceeds or instrumentalities of drug crimes, they did not constitute punishment for purposes of double jeopardy. We reverse the dismissal of Ro-senfeld's criminal charges and remand the case for an evidentiary hearing to determine the nature of the forfeited property.

**Reversed and remanded.**

HARTEN and FOLEY, JJ., concurring specially.

HARTEN, Judge (concurring specially).

Since I differ with the court only as to the purpose of the remand, I write separately.

I wholly agree with the court that the forfeiture of instrumentalities or proceeds does not constitute punishment for double jeopardy purposes. Because there are valid existing civil judgments that accommodate the state's claim that the forfeited property represents proceeds of past illegal drug sales, I would hold that double jeopardy does not bar criminal prosecution and reverse and remand for trial rather than for an evidentiary hearing.

The key question is whether the forfeited property constituted proceeds. The summary judgments, which Rosenfeld did not contest, indicated that the property was forfeitable under the drug forfeiture statutes, Minn.Stat. §§ 609.531–.5318 (1992 and Supp. 1993). The court has chosen to remand for an evidentiary hearing to allow the district court to decide the classification of the forfeited property.[1] No such hearing is necessary, however, in light of the evidentiary environment established within the forfeiture statutes.

Money and precious jewelry found in proximity to drugs or drug paraphernalia, and conveyances containing drugs, are presumed forfeitable in a judicial forfeiture proceeding; "[a] claimant of the property bears the burden to rebut this presumption." Minn.Stat. § 609.5314, subd. 1 (Supp.1993) (such property presumed subject to administrative forfeiture under this section); Minn.Stat. § 609.531, subd. 6a (Supp.1993) (in judicial forfeiture proceeding, state has the benefit of

---

1. The court's remand for an evidentiary hearing is problematic. The court advances no authority for ordering an evidentiary hearing in the district court criminal division to consider the forfeiture of property notwithstanding the established unappealed judgments currently existent in the civil division of that same court. These judgments have already adjudicated forfeiture in associated actions between the same parties concerning the same property. The basis for these judgments cannot be overlooked.

the presumption of section 609.5314). Because Rosenfeld did not contest the summary judgments, this presumption, unrebutted, became itself probative, and enabled the district court to enter forfeiture judgments in favor of the state. *See Kath v. Kath,* 238 Minn. 120, 124, 55 N.W.2d 691, 693–94 (1952) (presumption dictates decision in absence of evidence to the contrary).

Rosenfeld argues that the forfeitures should not be treated as forfeitures of proceeds because the actual basis for the forfeitures was the proximity of the forfeited property to the drugs seized. This argument, however, skips a step in the analysis. The forfeiture statutes provide that "associated property," records, proceeds, and the drugs themselves are subject to forfeiture under section 609.5311. Minn.Stat. § 609.5311, subds. 1, 2, 4 (1992). Property found in proximity to drugs is presumed subject to administrative forfeiture under section 609.5314. But because Rosenfeld filed timely petitions for judicial determination of the forfeitures, the forfeiture proceeding was transformed from administrative under section 609.5314 into judicial under section 609.531, subdivision 6a. *See* Minn.Stat. § 609.5314, subd. 3(c) (if the claimant makes a timely demand for judicial determination, the state must conduct the forfeiture under section 609.531, subdivision 6a). Subdivision 6a of section 609.531 allows the state to use the proximity presumption *in a judicial forfeiture.* Property in proximity is presumed to be subject to forfeiture—i.e., it is presumed to be "associated property" or records or proceeds.

The burden then shifts to the defendant to rebut the presumption. To do so, the defendant must put forth facts showing that the property was not forfeitable, that is, that the forfeited property was not "associated property," was not records, *and* was not proceeds. The defendant must rebut the presumption as to each rational basis for forfeiture. And if the defendant fails to meet this burden, the forfeited property is presumed to be forfeitable under *all* applicable bases. Here, because Rosenfeld did not attempt to show otherwise, the forfeited property was presumed to be *both* "associated property" and proceeds.[2]

Had Rosenfeld rebutted the presumption, the state would then have been required to prove particularly that the property was proceeds or that the property represented "associated property." But because Rosenfeld did not contest the summary judgments and thereby failed to rebut the presumption, the state did not offer such proof.[3] The burden shifted to Rosenfeld to rebut the forfeitability presumption and force the state to come forward with evidence showing the factual basis for the forfeiture. Rosenfeld chose not *to undertake that burden.* Consequently, Rosenfeld must live with the unrebutted presumption and the state's associated characterization of the property as proceeds of prior drug sales, the forfeiture of which does not constitute punishment for purposes of double jeopardy.

FOLEY, Judge (concurring specially).

I join the opinion of Judge HARTEN.

---

2. The state does not contend, nor is it rational to suggest, that the forfeited property was records.

3. The better practice, of course, would have been for the state to supplement the presumption by submitting more than minimal evidence of the basis for the forfeitures under section 609.5311 in support of summary judgment. Had that been done, an evidentiary hearing upon remand would likely not have been thought necessary.