UNITED STATES of America, Plaintiff,

v.

Bernardo CALLEJA, Defendant.

Bernardo CALLEJA, Petitioner,

v.

UNITED STATES of America,
Respondent.

Criminal No. CR–86–28–R,
Civil Action No. 95–0998–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

May 28, 1996.

---

Richard Pierce, Thomas J. Bondurant, Assistant U.S. Attorneys, for U.S.

Harvey Robbins, North Miami, Florida, Stephen Howard Sachs (Appointed by 4th Circuit), Wilmer, Cutler & Pickering, Washington, DC, for defendant.

### MEMORANDUM OPINION

TURK, District Judge.

This matter is before the court on the petitioner Bernardo Calleja's request for correction of an allegedly illegal sentence that was entered by this court on March 2, 1987. Calleja's request was styled as a motion to correct an illegal sentence pursuant to former Federal Rule of Criminal Procedure 35(a),[1] but was filed by the Clerk's office as a collateral attack on the sentence and thus was given a civil action number. The petitioner insists that the court treat his motion under Rule 35(a), and the court will abide by

his wishes; however, for purposes of clarity, the court will continue to refer to Calleja as a petitioner and to the government as a respondent, and will retain the civil action number that has been assigned to this issue. The government opposes Calleja's motion and has filed a motion to dismiss.

Counsel for the petitioner and for the government have submitted briefs and have made oral arguments before the court. Upon consideration of the arguments of counsel and the relevant case law, the court is of the opinion that the government's motion to dismiss must be granted and the petitioner's request for relief must be denied.

### I.

In 1987, Bernardo Calleja was convicted by a jury of eight separate offenses arising out of his participation in an international drug smuggling operation. The charges included conspiracy to import cocaine, possession of cocaine with the intent to distribute, and carrying on a continuing criminal enterprise. At Calleja's sentencing hearing on March 3, 1987, the trial court consolidated all counts and entered a general sentence of forty years imprisonment, plus a fine of $250,000.00 and a special assessment in the amount of $500.00. Calleja's direct appeal of his conviction and sentencing was denied by the Fourth Circuit.

In three separate administrative proceedings, property that had been seized from Calleja in April 1986 became subject to forfeiture.[2] In the first proceeding, $38,308.00 in United States currency was turned over by agents of the Drug Enforcement Agency (DEA). That money represented the remainder of approximately $190,000.00 that

---

1. Former Rule 35(a), applicable to offenses committed prior to November 1, 1987, provided as follows:

   **(a) Correction of Sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

   Rule 35(b) outlined the procedures for filing a motion to reduce a sentence, and allowed a defendant 120 days from the date of sentencing, or from the date a final order is issued from the court of appeals or the Supreme Court, in which to file such a motion.

2. The petitioner's motion also includes information about alleged IRS seizures of some of his Florida property in the wake of his arrest. It is unclear from his petition, however, how these seizures had or should have had any impact on the petitioner's criminal trial and sentencing. The government contends that a search of IRS and DEA records failed to reveal any seizures of property in Florida listed under the petitioner's name, and claims that it is completely unaware of any such seizures.

Calleja had paid to undercover DEA agents during the course of the DEA's sting operation to expose Calleja's smuggling ring. The DEA's forfeiture records show that the property was "seized" and considered for forfeiture as of May 19, 1986. On June 2, 1986, notice of the agency's decision to go forward with the forfeiture was sent by certified mail to Calleja's Florida address. For three weeks—beginning on June 18, 1996—notice of the seizure of the money was published in *USA Today.* Both the mailed and published notices explained the right of interested parties to contest the forfeiture. No claim or contest was ever initiated by Calleja. Accordingly, on November 19, 1986, the DEA issued a Declaration of Forfeiture on this property.

In another administrative proceeding, a man's watch that was seized from Calleja at the time of his arrest was forfeited to the government. As with the forfeiture of the money, the DEA gave notice of the seizure of the watch and invited interested parties to contest forfeiture. Notice was mailed directly to Calleja's Florida address on May 9, 1986; notice appeared in *USA Today* for three successive weeks, beginning May 21, 1986. When no challenge or contest was posted, the DEA issued a notice of forfeiture on March 20, 1987.

Finally, a man's diamond ring that was taken from Calleja upon his arrest was forfeited by the DEA. Notice of the seizure was mailed to Calleja's Florida address on May 9, 1986; notice was published in *USA Today* on May 21, 1986 and for three weeks thereafter. No challenge or contest was entered regarding the ring. Forfeiture proceeded and the DEA issued a notice of forfeiture on March 20, 1987.

Nine years after the sentencing in his criminal case, Calleja now challenges the legality of that sentence on two grounds. First, he asserts that the trial court's imposition of a "general sentence" on all eight counts was improper. Instead, he argues, the court should have assigned separate sentences for each count and then ordered the sentences to run concurrently. Calleja also argues that because of the administrative forfeiture of his property, his criminal prose-

cution and sentencing was an illegal second punishment in violation of the double jeopardy clause. The court finds no merit to either of these claims.

## II.

■ On the issue of a "general sentence" entered for the eight counts of conviction, the petitioner has offered no authority from the Fourth Circuit to suggest that such a sentence was improper. Indeed, the controlling circuit has denied similar motions challenging consolidated sentences. *See United States v. Owens,* 902 F.2d 1154, 1157 (4th Cir.1990) (refusing to correct sentence for "excessiveness" on Rule 35 motion where a "general sentence" of fourteen years was imposed on four charges that, treated separately, carried maximum penalties of 5, 3, 3, and 3 years); *see also United States v. Joshi,* 1987 WL 35058 (4th Cir. March 12, 1987) (unpublished) (rejecting argument that sentence must specify how term of incarceration relates to each charge).

The petitioner relies upon a 1964 case from the Fifth Circuit, *Benson v. United States,* 332 F.2d 288 (5th Cir.1964), in support of his motion. In that case, the court vacated a "general sentence" of fifteen years that was imposed after the defendant pled guilty to three separate counts. The maximum possible sentence on each count individually was five, ten, and ten years. *Id.* at 290. Thus, the maximum aggregate sentence would have been twenty-five years. In spite of the fact that the defendant's actual sentence was less than twenty-five years, the court found the sentence that was actually imposed to be too indefinite, because it exceeded the maximum penalty under any single count. *Id.* at 291.

The *Benson* court also noted, however, that the Fifth Circuit and others had previously held that "the reviewing Court generally will not disturb a sentence within the maximum which could have been imposed." *Id.* at 290; *see also id.* at 290 n. 4 (citing cases in which sentences were not disturbed either because they imposed a term less than could have been imposed on any one count, or because the sentence specifically related to convictions of one or more counts which carried a higher maximum penalty). The

government argues that *Benson* is distinguishable from the case at hand, because Calleja's conviction on the continuing criminal enterprise (CCE) charge carried a possible maximum sentence of life in prison. Further, the sentencing court specifically acknowledged that the forty-year sentence was directly related to the CCE charge. Thus, the "general sentence" that was imposed in this case was not invalid because it did not go beyond the possible maximum aggregate sentence, nor did it exceed the possible maximum sentence on the charge to which it was directly related. Finally, the government asserts that at most, the petitioner may be able to argue that his sentence was imposed in an illegal manner, but he cannot claim that the sentence itself is illegal. Under former Rule 35, the petitioner was required to bring such a claim within 120 days of his sentencing. *See supra,* n. 1. Nine years is clearly too late.

The court agrees with the government's interpretation of the applicable case law and its characterization of the petitioner's motion. Prior to the promulgation of the Federal Sentencing Guidelines, it was accepted that "[a] federal district judge has broad discretion in sentencing, and sentences imposed which are within statutory limits are generally not subject to appellate review." *United States v. Schocket,* 753 F.2d 336, 341 (4th Cir.1985). Nothing in the petitioner's arguments or authorities suggests that this court abused that discretion or that its imposition of a "general sentence" could be considered illegal. Accordingly, the court will grant the government's motion to dismiss on the "general sentence" challenge.

### III.

The second prong of the petitioner's Rule 35 motion contends that, because Calleja lost his property through administrative forfeiture proceedings during 1986 and 1987, his trial and conviction on federal criminal charges violated the double jeopardy guarantee of the Fifth Amendment. Calleja claims that his only remedy for this double punishment would be an immediate release from incarceration.

On this issue, the petitioner primarily looks to *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), for support. In that case, a manager of a medical laboratory in New York had been convicted on sixty-five counts of making false claims and on sixteen counts of mail fraud in relation to a scheme to defraud Medicare. Because of the manager's illegal conduct, Medicare had made overpayments to the laboratory in the amount of $585.00. *Id.* at 437, 109 S.Ct. at 1895–96. Subsequently, the government brought an action under the civil False Claims Act, in which it sought to recover a penalty of more than $130,000.00 from the manager. *Id.* at 438, 109 S.Ct. at 1896. The United States Supreme Court held that a civil penalty which is disproportionate to the government's actual losses constitutes a sanction which may violate the Double Jeopardy guarantee. *Id.* at 452, 109 S.Ct. at 1903–04.

In *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Court recognized that civil forfeiture under federal law (codified at 21 U.S.C. § 881) may also constitute " 'payment to a sovereign as punishment for some offense.' "[3] *Id.* at 622, 113 S.Ct. at 2812 (quoting *Browning–Ferris Industries v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989)). In its opinion, the Court noted that "[t]he Double Jeopardy Clause has been held *not* to apply in civil forfeiture proceedings, but only in cases where the forfeiture could properly be characterized as remedial." *Id.* at 608 n. 4, 113 S.Ct. at 2805, n. 4 (emphasis added). The Court cited *Halper* for the proposition that the Double Jeopardy Clause prohibits a second sanction that *may not* fairly be characterized as remedial. *Id.* (emphasis added). Thus, the crucial question for determining whether the Double Jeopardy Clause is implicated in a civil proceeding is whether the

---

**3.** The issue in *Austin* itself was whether a civil forfeiture action could violate the excessive fines clause of the Eighth Amendment. Upon holding that the clause could indeed be implicated in a forfeiture, the Court remanded the case for the Court of Appeals to decide whether the forfeiture in that particular case was "excessive."

fine or forfeiture is the equivalent of a monetary punishment.

The Fourth Circuit discussed the double jeopardy implications of civil forfeiture proceedings in *United States v. Cullen,* 979 F.2d 992 (4th Cir.1992) and in *United States v. Borromeo,* 995 F.2d 23 (4th Cir.1993). In *Cullen,* the Court rejected the claimants' argument that forfeiture of the building in which they conducted illegal activity was "punishment" because the value of the building exceeded any costs incurred by the government in its criminal prosecution, so that therefore, the forfeiture violated double jeopardy protections. 979 F.2d at 994. The Court of Appeals reasoned that the forfeiture "plainly served a remedial purpose, by removing the instrument through which the [claimants] had plied their unlawful trade." *Id.* The Court continued: "The removal of an instrument of the offense is not primarily an act of punishment; rather, forfeiture protects the community from the threat of continued drug dealing," and held that "the Double Jeopardy Clause does not apply to civil forfeitures where the property itself has been an instrument of criminal activity." *Id.* at 994, 995.

The *Cullen* reasoning was extended to include the proceeds of illegal activities in *Borromeo,* 995 F.2d at 27 (civil forfeiture of proceeds of illegal activities reduces incentive to engage in such activity and serves remedial purpose). In both cases, where the remedial and deterrent purposes of the forfeiture were clear, the Court of Appeals determined that *Halper* did not require the courts to conduct a proportionality review of the forfeited property versus the government's actual costs, or to give a claimant an individualized accounting of the government's losses. *See Cullen,* 979 F.2d at 995; *Borromeo,* 995 F.2d at 27. *See also United States v. Tanner,* 61 F.3d 231, 234–35, n. 3 (4th Cir.1995) (noting that *Austin* dealt with the excessive fines clause and "[f]or purposes of the Double Jeopardy Clause, by contrast, the courts

have repeatedly noted that any sanction imposed by the government may have a retributive aspect, but this does not mean that a forfeiture constitutes punishment for purposes of double jeopardy so long as the law also serves significant remedial aims").

■ In the present case, the petitioner has not demonstrated that the forfeiture of his property served a punitive, rather than a remedial purpose. The government has shown that the $38,308.00 that was forfeited was made up of funds paid by Calleja directly to undercover government agents in exchange for the agents' arranging shipments of drugs. Under *Cullen,* it is clear that this money was an instrument of the crime itself, and therefore appropriately subject to forfeiture. The forfeiture was not "punishment" in the sense implied by the Supreme Court's *Halper* and *Austin* decisions. Similarly, in the forfeiture action involving Calleja's ring and watch, the government clearly felt that these items were proceeds from the petitioner's illegal drug activity. Under *Borromeo,* these items were properly forfeited for remedial purposes.

■ Further, even if the civil forfeiture actions could be characterized as punitive, the petitioner here has failed to raise the double jeopardy issue at the appropriate proceeding. First, it should be noted that the civil forfeiture proceedings as to the ring and the watch occurred after the petitioner's criminal prosecution. In this Rule 35 motion, the petitioner seeks to have his criminal sentence set aside on double jeopardy grounds, even though he could not have asserted a double jeopardy argument at the time he was tried and sentenced. The petitioner also failed to file any claim or to argue double jeopardy in any of the forfeiture proceedings.[4] Double jeopardy does not attach in a forfeiture proceeding where the criminal defendant did not intercede or become a claimant. *United States v. Clementi,* 70 F.3d 997 (8th Cir.1995); *see United States v. Cre-*

---

4. The petitioner attempts to excuse his failure to file a claim by asserting that he was not properly notified of the forfeiture. The government has demonstrated, however, that Calleja was notified by mail and by publication. Such notice is sufficient. *See United States v. Tanner,* 61 F.3d 231,

236 (4th Cir.1995) ("The notice required by due process need only be 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'").

*tacci,* 62 F.3d 307 (9th Cir.1995) (a defendant who seeks to prove that a forfeiture constituted punishment must raise that claim in forfeiture itself and not simply in criminal proceedings). The petitioner's claim is thus distinguishable from all of the cases which discuss forfeiture as punishment and the potential relevance of the Double Jeopardy Clause. In *Austin, Cullen,* and *Borromeo,* a double jeopardy challenge arose during the course of a *civil* proceeding that followed a criminal conviction. The claimants in those cases sought to have their property returned to them as a result of the second action. Here, by contrast, the petitioner wishes to challenge his *criminal* conviction and sentence—to apply a double jeopardy argument retroactively to the first (and only) instance where jeopardy attached. The court finds that this attempt must fail.

### IV.

In sum, the court finds no merit to either of the petitioner's claims for release or resentencing under Rule 35. The petitioner's request for relief must be denied.